## GEOGHEGAN v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. May 11, 1900.)

1. STREET RAILROADS—NEGLIGENCE—INSTRUCTIONS.

In an action for injuries caused by plaintiff's wagon colliding with a street car while he was driving across defendant's tracks, an instruction that if, just before the accident, the wagon was driven alongside the track and it was turned into the track in front of the car, the verdict must be for defendant, was properly refused, since the turning into the track might have been far enough in front of the car to have given the gripman ample time to stop the car and prevent the accident.

2. SAME—SPECIAL DAMAGES—ALLEGATION—WHEN NECESSARY.

Where injuries for which recovery is sought do not necessarily result from those described in the complaint, they must be alleged as special damages; and an injury to plaintiff's eye could not be recovered for on an allegation of injury to the head and brain, since it did not necessarily result therefrom.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by John Geoghegan against the Third Avenue Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGH-LIN, and INGRAHAM, JJ.

E. Treadwell, for appellant.

H. C. Smyth, for respondent.

VAN BRUNT, P. J. This action was brought to recover damages for injuries sustained by the plaintiff through a collision with one of the defendant's cars at or near Forty-Third street, as the plaintiff was attempting to cross one of the defendant's tracks. The plaintiff claimed: That on the 31st of March, 1897, he was driving a wagon along Third avenue in the early morning,—at about a quarter to 6 o'clock. He was on his way uptown, and had been driving in the tracks of the defendant up to Forty-Second street, where he pulled out to the east side of the street. The car stopped at Forty-Second street. As the plaintiff proceeded uptown his progress was obstructed by some fire trucks, so that he turned back into the tracks before he reached Forty-Third street. He continued on the easterly track of the road until he reached Forty-Fourth street, and about the center of the crossing. At that point he looked back, and saw the cable car about 50 feet or more behind, when he started to pull out. The horse and wagon got clear of the track, with the exception of the hind wheel which was struck by the car, and the plaintiff was thrown out and injured. The defendant claimed: That the plaintiff was driving north on the roadway of Third avenue, alongside of and to the east of the car, between the track and the curb, moving rapidly, his horses at a gallop, when suddenly, without warning, he turned to the westward onto the track, directly in front of the car. As soon as the defendant's gripman saw the wagon turning in front of him, he released the cable, applied his brake, and did all in his power to stop the car, which struck the left side of the wagon and

knocked it against one of the pillars of the elevated railroad, and the plaintiff was thrown out and injured. The complaint alleged that by reason of said collision the plaintiff had sustained severe wounds and bruises to his head, right hip, left arm, back, and other parts of his body; that his spine had been injured, and that his brain had been injured; and that he had been informed and believed that thereby he had sustained other severe internal injuries. The grounds presented upon this appeal are errors claimed to have been made in the judge's charge and refusals to charge, and also in the admission of testimony tending to prove permanent injury to the eye of the plaintiff, followed by a charge of the court instructing the jury that they might award damages for such permanent injury. It was also claimed that the damages were excessive.

In respect to the errors claimed to have been made by the judge in his charge and refusals to charge, the only ones presented for our consideration upon this appeal are those relating to that part of the charge of the court which referred to the circumstances surrounding the immediate happening of the accident, namely, the turning in or out of the plaintiff upon or from the tracks of the defendant. And it is urged that the court erred in refusing to charge that if the jury believed that just before the happening of the accident the wagon was driving up the east roadway of Third avenue, between the tracks and the curb, and that it turned into the track, in front of the car, their verdict must be for the defendant. It is clear that this proposition is not well expressed, because it did not contain an element which was necessary to make it a good proposition, namely, that the plaintiff turned into the track in so close proximity to the car that the gripman, using proper diligence, could not avoid a collision. The expression of the request is, "turned into the track in front of the car." It might have been 100 feet away from the front of the car, and the gripman might have had ample time to have stopped the car so as to avoid a collision, and yet the jury were requested to be instructed in that case that the plaintiff could not recover. It is clear that the court was justified in refusing such a request.

The exception to the evidence in regard to the permanent injury to the eye seems to be of a more serious character. There was nothing in the complaint which called attention to an injury of that kind. It was clearly in the nature of special damages, and the rule has been recently reiterated in the court of appeals that, unless the injuries for which damages are sought to be recovered necessarily and immediately result from those described in the complaint, they must be specially alleged as special damages, or a recovery cannot be had for such injuries. Kleiner v. Railroad Co., 162 N. Y. 193, 56 N. E. 497. And attention is called in the case cited to that of Uransky v. Railroad Co., 118 N. Y. 304, 23 N. E. 451; the rule being approved that "special damages which are naturally but not necessarily the result of the injury complained of must be specifically alleged." It is clear that these injuries to the eye which were claimed to be established by the evidence in this case were not the necessary result of any of the injuries described in the complaint. Certainly the head

could be injured without the eye being affected, and the brain might be injured without the eyes being implicated, and these are the only allegations to which this injury to the eye could be referred. Under the rule suggested, it was necessary, if the plaintiff sought to recover for these special and not inevitable results of the injury, to allege them as special damages. This rule of pleading gives a clear and unmistakable guide to the court in the admission of proof, and to the defendant in his preparation for trial. Injuries which inevitably result from those described in the complaint, and which the defendant must know from the allegations of the complaint had been suffered, may be recovered for under the general allegations. But, where the injury is of a character which does not necessarily result from that described in the complaint, then the defendant has no reason to expect proof of any such unsuspected injury upon the trial.

We think that for this error the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

RUMSEY and McLAUGHLIN, JJ., concur.

INGRAHAM, J. I concur with the Presiding Justice, except as to the exception to the evidence in regard to what is called the "permanent injury to the eye." The complaint alleges that "by reason of the said collision, and negligence of the defendant, plaintiff has sustained severe bruises and wounds to his head, right hip, left arm, back, and other parts of his body; that his spine has been injured and brain has been injured; and that he is informed and believes that thereby he has sustained other severe internal injuries." The evidence objected to, and which is held to be incompetent, occurs in the testimony of Dr. Elebash, who examined the plaintiff shortly before the trial. He testified without objection that (on that examination):

"I found that the plaintiff had trouble with his eyesight; found that he had twitching of the eyeballs; found that he had some symptoms of paralysis, and some sensitiveness over different regions of his scalp; found that he had a tremulous tongue; found that he had disordered urinary apparatus, and difficulty in walking and reading. I think that is about all."

The doctor was then asked:

"What test did you put him to, to find these different things? A. I tested his sight."

This was objected to by counsel for the defendant as incompetent, immaterial, and irrelevant; the plaintiff's counsel stating,

"I wish to show that the examination is of such a thorough character that it is entitled to credit."

The objection was overruled, and the defendant excepted. The doctor was then asked:

"Q. With regard to the acuity of vision, what did you find in that respect? That is to say, was there any deficiency? A. I found that his left eye was deficient two lines on the test card; that is, I mean by that—"

—When an objection was interposed by the defendant, "as not pleaded," which was overruled; the defendant excepting. The witness then continued:

"I mean by that that he could see a line of letters forty feet away which he should see at twenty feet away. With his left eye he saw a line of letters forty feet away which should be seen at twenty feet away. With his right eye he saw the same line twenty feet,—showing the difference between the two."

He further testified that the sense of eyesight is supplied from the brain, through the optic nerve, and has direct connection with the brain. The witness was then asked a hypothetical question, which, after reciting the facts alleged to have been proved, continued:

"Would you say that the blow received on the 31st of March, 1897, would be a sufficient cause for the conditions that you have testified that you found the plaintiff in?"

The witness answered:

"I think that the blow furnished sufficient cause for the conditions stated."

The witness was then asked:

"How would you describe the conditions you found the plaintiff in? What was he suffering from?"

The witness answered, without objection:

"He is suffering now from partial atrophy of the optic nerve. He is suffering, also, from a congestion of the covering of the brain, called 'pachymeningitis.' Q. The trouble with the optic nerve,—from what did that proceed? A. A trouble with the optic nerve proceeds, probably, from a slight effusion in the base of the brain, following the injury."

And this question being repeated, after an objection by the defendant, as not pleaded, the witness stated:

"I should say that the trouble with the optic nerve came from effusion on the floor of the fourth ventricle, or in the base of the brain, subsequent to the injury. What I have stated constitutes an injury to the brain. The optic nerve is the brain,—is part of the brain. * * * The twitching of the eyeballs,—the technical term of that is 'nystagmus.' That interferes very materially with the patient's ability to read."

The complaint having alleged that the brain and spinal cord of the plaintiff were affected, it was certainly competent for the plaintiff to prove any symptom which indicated an injury to the brain. The physician described an injury to the optic nerve which was produced by an injury to the brain which was the result of the accident, and testified that the condition of the eye was a symptom of the condition of the brain; that the cause of these special abnormal conditions which he described was the injury to the brain. If this injury to the brain was a result of the accident, the plaintiff was entitled to recover the damages sustained by him in consequence of such injury to the brain. It may be (although there is no evidence in the case to that effect) that the brain could be injured without the sight being affected. It may also be that the sight could be affected without injury to the brain. But evidence was admissible to show that the condition of the eyesight, as described by this physician, was the result of an injury to the brain, and it was for such an injury to the brain that the plaintiff was entitled to recover.

It certainly cannot be necessary to allege in a complaint every one of the symptoms or conditions which result from an injury to a certain organ of the body, to justify a witness in giving evidence as to those symptoms from which he draws the conclusion that the organ alleged to have been injured was in fact injured as the result of an accident. There is no complaint here that the court, in submitting this question to the jury, allowed them to include in the verdict damages sustained by the plaintiff in consequence of an injury to the eye, as disconnected from the injury to the brain, which, under the pleadings, was the injury for which the plaintiff was entitled to recover; and I do not think that this judgment should be reversed because the witness, to make his evidence intelligible, described to the jury the symptoms that he discovered as indicating an injury to the brain by the accident. The case of Kleiner v. Railroad Co., 162 N. Y. 193, 56 N. E. 497, which is relied upon by the appellant, does not, it seems to me, sustain his contention. In that case the complaint alleged injury to various specific organs of the body. On the trial the plaintiff was allowed to show injuries to other organs not specified; to show that her heart was affected, that the dorsal muscle on the right side was paralyzed, and that she had trouble with her menstruation, suffered from vertigo, and had a curvature of the spine. She was there allowed to show that she sustained injuries to specific organs of the body which were not alluded to in the complaint, and which had no relation to any of the organs that the complaint alleged were injured. Such a condition does not exist in the case now under consideration. The plaintiff in this case alleges an injury to the brain, and, as a symptom resulting from an injury to the brain, the doctor describes a condition of the eye. Undoubtedly, under the complaint in this action the plaintiff would not have been allowed to prove and recover for a diseased heart, liver, or kidney, but no evidence of a disease of an entirely distinct organ was allowed. In the Kleiner Case the evidence was offered as a distinct element of damage different from that alleged in the complaint, where the record disclosed that defendant claimed that it was surprised at the reception of such proof as an element of damage. No such question was presented in this case. There were here described certain symptoms which followed from and were caused by an injury to the brain which was pleaded as a result of the accident, these symptoms affecting the eye and other organs of the body. Certainly, upon all the principles which have been applied in cases of this kind, such evidence was competent. I think, therefore, the judgment should be affirmed.

Judgment and order reversed; new trial ordered; costs to appellant to abide the event.