THOMPSON, Respondent, v. ST. LOUIS AND SUBURBAN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, March 21, 1905.

1. CARRIERS OF PASSENGERS. Degree of Care: Boarding Car by Front Platform. Where a passenger, on account of the crowded condition of the rear platform, on the invitation of the motorman boarded a street car by the front platform, where it was necessary to pass within the radius of the brake handle, it was the duty of the motorman to exercise the high degree of care required of a carrier of passengers to prevent injury to such passenger under the circumstances.

2. ———: Revolving Brake Handle. Where a passenger, in the act of boarding a car, was struck and injured by the brake handle which slipped and revolved suddenly in a manner not explained,.the inference that it slipped by reason of being set without proper care by the motorman was reasonable.

3. DAMAGES: Pleading: General Damages. In an action for personal injuries, general damages are such as are the natural and necessary result of the injuries complained of and need not be specially pleaded, because a description of the injury itself notifies the defendant what damages are the necessary result of the injury.

4. ———: ———: Special Damages. Special damages are such as might naturally, but not necessarily, result -from the injury, and must be specially pleaded to entitle the plaintiff to recover.

5. ———: ———: ———: In an action for injuries caused by a blow in the face, a functional trouble of an abdominal organ, which manifested itself seventy days after the injury, was not a necessary result of the blow, but might have been induced by it and was required to be specially pleaded before it could be proven.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

REVERSED AND REMANDED.

*Jefferson Chandler* and *J. Lionberger Davis* for appellant.

(1) The court erred in submitting the question of negligence to the consideration of the jury. (a) In failing to grant a nonsuit. (b) In its instruction numbered 1, which was confusing and did not define the issue. Labatt, "Master and Servant," 82; Johnson v. O., 36 W. Va. 73; Boyington v. Miller, 140 Mo. 684; Fox v. Gastenbury, 29 Conn. 204; Holmes "Common Law," p. 108; Holt v. Railway, 84 Mo. App. 446; Feary v. Met., 162 Mo. 75, 62 S. W. 452.

(2) The court erred in admitting incompetent evidence over the objection of the defendant and in refusing to remove this evidence from the consideration of the

jury.   Hughes v. Telegraph Co., 79 Mo. App. 133; Roberts v. Graham, 6 Wallace 578; Ratcliffe v. Evans, 2 Q. B. 524; Pat. Mo. Code Pl., secs. 307 and 320; Barrett v. Telegraph Co., 42 Mo. App. 542; Brown v. Railway, 99 Mo. 310, 12 S. W. 655; Mellor v. Railway, 105 Mo. 455, 16 S. W. 849; Beach, Con. Neg. (3d Ed.), secs. 32 and 33; Saxton v. Railway, 98   Mo. App. 494,   72 S. W. 717; Schaffer v. Railway, 105 U. S. 249; Smart v. K. C., 91 Mo. App. 591; Black's Law Dict., p. 592; Cothorn v. Packing Co., 98 Mo. App. 343, 73 S. W. 279; State v. Soper, 148 Mo. 217, 49 S. W. 1007.

*Seneca N. & S. C. Taylor* for respondent. ·

A carrier of passengers is required, so far as it is capable by human care and foresight, to carry them safely, and it is responsible for all injuries resulting to its passengers from even the slightest negligence on its part.   Higgins v. Railroad, 36 Mo. 428; Lemon v. Chanslor, 68 Mo. 356; Waller v. Railroad, 83 Mo. 615; Leslie v. Railroad, 88 Mo. 55; Furnish v. Railway, 102 Mo. 150, 15 S. W. 315; O'Connell v. Railroad, 106 Mo. 482, 17 S. W. 494; Clark v. Railroad, 127 Mo. 208, 29 S. W. 1013; Hite v. Street Railway, 130 Mo. 139, 31 S. W. 262, 32 S. W. 33; Powers v. Railway, 60 Mo. App. 482, 483; Parker v. Railway, 69 Mo. 54; Chouquette v. Elec. Railway, 80 Mo. App. 520.

STATEMENT.

Omitting caption and formal parts, the petition alleges:

"That on the twenty-first day of June, 1902, between the hours of seven and eight o'clock a. m., plaintiff was desirous of becoming a passenger, and stood on the south side of Franklin avenue and on the east crosswalk of Leonard avenue, and seeing one of defendant's passenger cars approaching, she signalled said car to

stop, and the same did stop, so that the center of said car stood over said cross-walk, and that she and other passengers observing that the rear platform was crowded and observing that the motorman beckoned her and other passengers to the front platform, and that he opened the gate of said platform and that there was plenty of standing room upon said front platform, she started forward in order to get upon said platform as a passenger, and she stepped upon the first step leading to said platform, and with her body in rather an incumbent position, bending forward in order to balance the same and while she was in the act of getting upon said platform, to become a passenger upon said car, and while she was ready, able and willing to pay her fare as such passenger, the motorman, while holding the crank operating the brake, carelessly and negligently allowed the same to slip and to rapidly whirl around with great force and violence, and while so whirling around it struck plaintiff on the right side of the face, cutting through her upper lip, breaking off her right eyetooth and injuring two of her other teeth, fracturing her jaw, causing her to lose much blood, causing her a serious nervous shock, and causing her excruciating physical pain and mental anguish, and maiming and disfiguring her for life.

"That ever since said injury she had suffered great physical pain and mental anguish, and will continue to suffer the same for many months; if not years to come, and she will suffer permanent disfigurement on account of said injuries.

"She avers that her said injuries were occasioned wholly by the carelessness and negligence of said motorman in inviting her to enter upon the front platform of said car, and then while she was in the act of doing so, to carelessly and negligently permit the crank of said brake to whirl around rapidly and with violence, so as to strike and injure her as aforesaid while she was in the act of entering said car.

"Plaintiff avers that before her said injuries she had

regular employment and was earning twenty dollars per week, but since said injuries she has been unable to do any work or earn anything, and will not be able to do so for a long time yet to come; that she has been compelled on account of said injuries to incur large sums of money for the services of physicians, surgeons and dentists and will be compelled in the future to incur and pay large sums of money for physicians, surgeons and dentists on account of said injuries; that she has been compelled and will be compelled in the future to incur other expenses for medicines and appliances, to the probable extent of five hundred dollars."

The answer was a general denial and a plea of contributory negligence in bar of the action.

Plaintiff stated that prior to the injury complained of she was engaged in the millinery business, earning a salary of twenty dollars a week. On the morning of June 21, 1902, at seven thirty o'clock, she left her home to take the car to her place of work. She went to the southeast corner of Leonard and Franklin avenues, in the city of St. Louis, waited for a car, and as the car approached, she said she noticed that it was very crowded, "the back platform was very crowded, and I stepped back, intending to wait for another car, and as I did so the motorman opened the gate; he opened the gate before the car had stopped or came to the crossing, and I determined then to go on that car." The car stopped with the street crossing about midway between the front and back platforms. "I walked forward; just as I had my right foot on the step the gate swung forward—some one standing back of the gate, I suppose, caused it to swing—and the motorman had hold of crank with his right hand, and he changed and took hold of it with his left hand, in order to open the gate back again; and just as I had taken the first step and was in the act of raising my body to the platform, he let go of the crank and it whirled around and struck me in the face, cutting clear through my lip." Plaintiff stated she was struck

as she was bending forward to balance her body as she mounted the front platform. Her eyetooth was broken off, exposing the nerve, her jaw fractured, and her nervous system greatly shocked, causing great pain and anguish of body and mind. She was absent from her work four weeks, and when she returned was very nervous and suffered from headaches; her nervousness seemed to increase all the time, and she took medicine continually.

"Q. What was the condition of your health before you were hurt?    A. It was always good.

"Q. And how has it been constantly since you were hurt?    A. It has been very bad since.

"Q. In regard to your courses before your were hurt, what was the regularity of those?"

Counsel for defendant objected to any evidence along this line, because there was no charge of that kind in the petition. The court overruled the objection, to which ruling of the court the defendant then and there excepted at the time. "A. I had always been regular up to that time. The courses came on every twenty-eight days regular, but just at the time, about the time for my courses to appear, they didn't come on, and the doctor said it was on account of the shock."

The court: "You need not state what the doctor said.

"Q. Tell how it has been ever since?    A. It did not come until five weeks after the accident, and when it did I suffered terrible pain in my back and head, and suffered terribly from nervousness; and after that it came on at irregular intervals; came on every two or three weeks, on one occasion just a week apart.

"Q. Are they attended with floodings?    A. Yes, sir; always before it came on for three or four days and now it lasts six or eight days."

Mr. Holland: "Your honor, I now want to strike from the record all of the testimony about the irregularity of the periods, on the ground that it is not pleaded and the defendant was not advised of any such claim."

The court overruled the motion, to which ruling of the court the defendant then and there excepted at the time.

On cross-examination plaintiff stated there was a space of about three feet between the brake handle which struck her and the body of the car. There were two or three men on the front platform, one right back of the gate. The motorman took his right hand off the brake handle and held the brake with his left hand, using his right hand to shove back the gate, which had swung forward because of the man back of it.

"Q. He had caught hold of the brake with his left hand? A. Yes, sir; he was holding it with his left hand.

"Q. And you say the crank of the brake escaped from his left hand? A. Yes, sir."

In the plaintiff's cross-examination is the following:

"Q. One question I forgot to ask you before. Your deposition was taken in this case on the thirtieth day of August, was it not? A. Yes, sir.

"Q. Your counsel was present? A. Yes, sir.

"Q. And you were asked how this accident happened and what injuries you sustained? A. Yes, sir.

"Q. Do you remember at that deposition that you said nothing about the trouble you complain of in your periods? A. Well that trouble had not developed at that time.

"Q. It had not developed on August thirtieth? A. No, sir.

"Q. It had not; and when I asked you for any other troubles that you had you did not mention that among your troubles resulting from the injury, did you? A. I don't think I mentioned that."

In respect to the manner in which plaintiff was injured and the extent of her injuries, plaintiff was corroborated by several other witnesses.

Dr. E. R. Meng, a physician of twenty-five years experience, testified that he had examined plaintiff a short

time prior to the trial, and in respect thereto said: "I found the woman apparently anaemic; a pallor, and evidences of nervousness; and found that prior to the injury she had sufferred no such nervousness. I asked with reference to her complexion, whether it was pale, and she said it was not. I further asked her with regard to her monthly periods, and she told me that the function was irregular and disturbed. I asked her if prior to this injury she had been regular. She said she had; she had suffered no distress or discomfort resulting from that period, but since, she had suffered; and I associated this condition in part from the injury. I thought it might result from a shock to the nervous system, either physical or moral."

Witness further testified as follows:

"Q. Did you learn from the examination with what degree of irregularity her courses came on now? A. She told me that they were not regular at all. The period should be recurring about every twenty-eight days, but in her case there had been a recurrence on one occasion, I believe, as early as a week after one period; a condition that we call metropasia, because the flow was excessive and too frequent, which did not exist prior to the injury.

"Q. As to the extent of the duration of these periods when they did come on, what was that? A. From three to eight days, and the normal is three to five, ordinarily."

In answer to a question hypothecated on plaintiff's evidence stating her condition, immediately prior to her injury and her subsequent condition, the doctor stated that he would attribute the condition plaintiff complained of to the injury, and gave as his opinion that she would not recover of the functional trouble under much less than two years; and that the trouble was liable to reappear, after apparent recovery, from any nervous shock that she might receive.

The only witness offered by defendant was the mo-

torman in charge of the car, who testified as follows: "When I stopped the car to let those two ladies on, the gate was closed, and I set my brake as usual. I never knew it to fly off of release before without some cause; and I opened the gate with my right hand and turned around to open the door with both my hands, to allow the ladies to get in the car, and while I did so the brake flew off—whatever caused it I can't tell—and hit this young lady in the face." The witness said he set the brake as he always did, and testified that there is a cog wheel or ratchet on the brake staff where it passes through the floor of the platform; that to set the brake the cogs in the ratchet are caught by a dog fitting in the cogs and that he set the brake by pushing the dog with his foot so that it caught the ratchet wheel; that both the ratchet and dog were in good condition, and it was impossible for the brake to turn until it was released from the dog and that the dog would stay in place and hold the break steadfast until it was released by some-one; that he did not move the dog from the ratchet nor see any one else do so; that there were three other men on the platform, but he did not notice any of them about the brake and had no idea how or by what means the brake was released; that the platform was from three to three and one-half feet wide.

At the close of all the evidence, the defendant moved the court instruct that plaintiff could not recover. The court refused this instruction and gave other instructions to the jury, under which it found a verdict of one thousand dollars in favor of the plaintiff. Defendant appealed in the usual way.

BLAND, P. J. (after stating the facts).—1. Defendant is a carrier of passengers for hire, and the law is that it is bound to exercise the greatest care, consistent with the practical operation of its car, towards its passengers, not only while they are on the car but while they are in the act of boarding them or alighting from

them.     When its cars are stopped for the purpose of
taking on passengers, its duty to see that they are safely
aboard.    Meriwether v.  Cable Co., 45 Mo. App. 528;
O'Brien v. Transit Co., 84 S. W. (Mo.) 939.    This duty,
the evidence clearly shows, the defendant owed the plain-
tiff.    The sudden turning of the brake, which caused
the injury, is not accounted for.    The narrowness of the
platform, the fact that there were three men, beside the
motorman, on it, and the presence of the gates swinging
inward and toward the body of the car, tend to show that
one boarding the car would, in all probability, come
within the radius of the brake handle, and as the motor-
man invited the plaintiff to enter the car by the front
platform (the rear one being in a crowded condition) it
appears to me that it was his duty to exercise that high
degree of care the law requires to prevent injury to the
plaintiff while she was mounting the steps to the plat-
form for the purpose of taking passage on the car.
Drew v. Railroad, 1 Abb. Dec. 556.    As before stated,
the slipping of the brake is not explained.    The brake
was under the control of defendant's motorman, who
testified that it could not set itself free and that it was
impossible for the brake to turn without the cog wheel
was first released from the dog, and that the dog could
not be moved except by human agency.    From this evi-
dence it is shown, that in the ordinary course of things,
the accident would not have happened if the motorman
had used proper care to set the brake, and the reasonable
inference is that he did not properly set it.

A case on all fours with the one at bar is Gilmore v.
Railroad, 6 Hun (N. Y.) 117, wherein the evidence of
the plaintiff tended to show that the motorman on one
of the defendant's electric cars left the brake on the front
platform turned on tight, so as to hold the car in place,
and that the injuries complained of were sustained by
the brake being suddenly set free in some unexplained
manner while plaintiff, with other passengers, was mak-
ing her way into the car.    It was held that the question

of defendant's negligence should have been submitted to the jury and that the slipping of the brake being unexplained authorized an inference of negligence. What was said by ERLE, C. J., in Scott v. London Dock Co., 3 Hurlst. & Colt 596, to-wit: "Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care," is sound logic and wholesome law. The same principle of law is announced in Volkmar v. Railroad, 134 N. Y. 418; Mosby v. Commission Co., 91 Mo. App. 500; Hite v. Railway, 130 Mo. 132, 31 S. W. 262, 32 S. W. 33. And as there is no evidence tending to show that plaintiff was negligent in any respect whatever, we conclude that the case was one for the jury, and that the court did not err in refusing a compulsory nonsuit.

2. In view of the fact that no special damages were laid in the petition, was it error for the purpose of proving damages to admit plaintiff's evidence tending to show that she was suffering from the functional trouble testified to by her, and expert evidence tending to show that said trouble resulted from the injury? It is the well-settled law that special damages must be alleged in the petition for the purpose of giving the defendant notice of what he is to meet on the trial. But what are special damages, as contradistinguished from general damages, is sometimes a question of difficulty.

In Roberts v. Graham, 6 Wall. 578, it is said: "Special as contradistinguished from general damages, is that which is the natural, but not the necessary, consequences of the act complained of."

In Hughes v. Telegraph Co., 79 Mo. App. 1. c. 140, this court said: "Special damages are such damages as are superadded to general damages arising from acts injurious in themselves, for example, uttering slanderous

words, slander of title, slander of one in his professional calling, or they are an allowance for losses which in a particular case were natural and proximate, though not the necessary consequence of the wrong."

In Brown v. Railway, 99 Mo. l. c. 381, 12 S. W. 655, it is said: "General damages are such as the law implies or presumes to have occurred from the wrong complained of, and that they need not be pleaded. In such cases the wrong itself fixes the right of action. Special damages are such as really took place, and are not implied by law. They are either superadded to general damages arising from an act injurious in itself, or are such as arise from an act not actionable in itself, but injurious only in its consequences."

In Lesser v. Railway, 85 Mo. App. l. c. 331, it was held that damages which are consequential, as loss of time, but which are not necessarily the result of an injury, should be specially pleaded.

Sutherland says: "Under a general allegation of damage the plaintiff may prove and recover those damages which naturally and necessarily result from the act complained of; for the law implies that they wil proceed from it." 2 Sutherland on Damages, sec. 418.

In volume 8, page 542, Am. & Eng. Ency. of Law (2 Ed.), it is said: "General damages are those which necessarily and by implication of law result from the act or default complained of." And on the following page it is said: "Special damages, as contradistinguished from general damages, have been defined as those which are the natural but not the necessary result of the act complained of." Substantially the same definitions are given in volume 5, Ency. of Plead. & Prac., pages 717, 719 and 720.

The law implies such damages as are the natural and necessary result of the injury, that is, such as our experience and observation has taught us naturally and necessarily result from like injuries; these need not be pleaded specially, for the reason the statement and des-

cription of the injury itself notifies the defendant what damages are the natural and necessary result of the injury. But no such notice is given a defendant, that damages will be claimed for injuries which might naturally but not necessarily result from the injury, by a general allegation of damages, and for this reason they should be specially pleaded to entitle plaintiff to recover for them. A blow upon the face and lip, sufficient to break off a tooth and to fracture the jaw bone, would not directly affect any part of the abdominal region, and hence would not naturally and necessarily disturb or damage any of the functions located in that region, therefore, if damages should result to any of them it might be the natural but not the necessary result of the injury. Plaintiff's evidence shows that her functional troubles did not manifest itself until seventy days after the injury and was caused, according to the expert evidence, by nervous shock produced by the blow, hence it was not the natural and necessary result of the blow but was superinduced by the blow and might not have resulted from the injury. For these reasons we think these damages were special and should have been specially pleaded to entitle plaintiff to prove them and have their assessment submitted to the jury.

The first instruction given for plaintiff is assailed by the defendant on several grounds. The instruction incorporates some of the hyperbole definitions of the care which a carrier is bound to exercise towards its passengers, found in some of the opinions of our appellate courts. The instruction may be abstractly correct, but it seems to me that an instruction would be a better guide to the jury and more favorable to the plaintiff if it embraced all the issues and recapitulated the facts in the case and stated the legal conclusions to be drawn from those facts than the one given. Hyperbole is bad enough when found in the opinion of a appellate court; it is much worse when found in an instruction to a jury; its tendency is to mislead always.

For the error herein noted, the judgment is reversed and the cause remanded. All concur. *Goode* in the result.