# PUGMIRE v. OREGON SHORT LINE R. CO.

(Supreme Court of Utah.  Dec. 11, 1907.)

1. MASTER AND SERVANT — RELATIONSHIP — HOW CONSTITUTED — DUTY OF MASTER TO CARE FOR SAFETY OF SERVANT.  Where defendant railroad employed plaintiff's husband as manager for its outfit cars, requiring him to cook or else furnish a cook, and permitted plaintiff to accompany him and cook for the outfit employees, the relation of master and servant existed between plaintiff and defendant within the meaning of the rule requiring a master to exercise ordinary care to prevent injury to his employees, though plaintiff was not entitled to pay for her services.[1]

2. SAME—NEGLIGENCE—INJURIES TO SERVANT.  Where a railroad's outfit cars were fitted up and stationed on one of its side tracks for the use and occupation of its employees, the employees had the right to assume that the railroad would exercise ordinary care to prevent the cars from being run into by its switch engine and passing trains.

3. SAME—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.  In an action against a railroad for injuries to plaintiff received in a collision between the car in which she was working and one of defendant's engines, the questions of defendant's negligence and plaintiff's contributory negligence held for the jury.

4. APPEAL—QUESTIONS FOR REVIEW—FINDINGS OF JURY.  Findings of the jury under proper instructions on questions of fact are final and cannot be disturbed by the Supreme Court.

5. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRACTS RELEASING LIABILITY—VALIDITY.  A master cannot by contract in advance absolve himself from liability for injuries to a servant caused by the master's negligence; such a contract being void as against public policy.[2]

6. SAME—EVIDENCE.  In an action by a female employee against a railroad for injuries through negligence, evidence as to whether plaintiff was married or not was immaterial.

7. DAMAGES—PLEADING—ISSUES, PROOF, AND VARIANCE.  Where, in an action for injuries through negligence, plaintiff, specifically alleged certain injuries to her head, back, arms, etc., and that she was thereby permanently incapacitated from performing her daily work as a cook and housewife, no mention being made of any injury to her eyes, evidence as to the diseased condition of her eyes since the accident was inadmissible, since, having limited her allegations of injury to specific matters, she was confined in her proof to them and to consequences which could be reasonably inferred as flowing therefrom.[3]

---

[1] Wilson v. Sioux Con. Min. Co., 16 Utah 392, 52 Pac. 626.

[2] Stone's Adm'r v. Union Pac. R. Co. (Utah), 89 Pac. 715.

[3] Croco v. O. S. L. R. Co., 18 Utah 311, 54 Pac. 985, 44 L. R. A. 285.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by Christine Pugmire against the Oregon Short Line Railroad Company. Judgment for plaintiff, and defendant appeals.

REVERSED.

*P. L. Williams, Geo. H. Smith,* and *Jno. G. Willis* for appellant.

*Kinney & Wilson* for respondent.

### APPELLANT'S POINTS.

The relationship of master and servant is a contractual one, and that contract must possess all the essential elements necessary to the formation of a contract, the same as in all matters of contract. And another indispensable element necessary to constitute a contract of employment, and by some authorities said to be the final test of the relation is this: That he whom it is sought to charge as master must have the supreme control, not only in the selection of the servant and the determination of the work to be done, but also as to the mode of executing the work, the right to direct and control it in all of its details, and not merely as to the ultimate results. In other words, the employer must be master of the whole situation in order to create the relation. (*Boot & Shoe Mfg. Co. v. Jamar,* 93 Md. 404, 49 Atl. 847, 86 Am. St. 428; *Brown v. Smith,* 86 Ga. 274, 22 Am. St. 457-459; Wood on Master and Servant, secs. 1, 4; 1 Shearman & Redfield on Negligence, sec. 160; 20 Am. & Eng. Enc. of Law [2 Ed.], p. 11.)

Between master and servant, negligence is not inferred from the mere happening of an accident to the servant. (*Wells v. Utah Construction Co.,* 23 Utah 524; *Fritz v. Electric Light Co.,* 18 Utah 493; *Railroad v. Dixon,* 139 Fed. 737; *Railroad v. O'Brien,* 132 Fed. 593, 67 C. C. A. 421; *Westland v. Mines Co.,* 41 C. C. A. 199, 101 Fed. 65;

*Railroad v. Barrett,* 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; *Patton v. Railroad,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; *O'Connor v. Railroad,* 83 Iowa 105, 48 N. W. 1002; *Brownfield v. Railroad* 107 Iowa 254, — N. W. 1038; *Brymer v. Railroad,* 90 Cal. 497, 27 Pac. 371; *Huff v. Austin,* 46 Ohio St. 386, 21 N. E. 864, 15 Am. St. 613; *Wormell v. Railroad,* 79 Me. 397, 10 Atl. 49, 1 Am. St. 321; *Grant v. Railroad,* 133 N. Y. 659, 31 N. E. 220.)

The burden of proving that that accident resulted from the negligence of the master rested upon the plaintiff to establish that fact. All that the evidence even tended to establish was the naked fact that some sort of an accident did occur, and this is absolutely insufficient to sustain the burden of proof that rested upon the plaintiff. *Railroad v. Cox* [Neb.], 67 N. W. 740; *Railroad Co. v. Tindall* [Kan.], 46 Pac. 12; *Carter v. Railroad* [Mass.], 58 N. E. 694; *Duffy v. Uplon,* 113 Mass. 544; *Electric Co. v. Kelly,* 57 N. J. L. 100, 29 Atl. 427; *Bien v. Unger,* 64 N. J. L. 596, 46 Atl. 593; *Davidson v. Davidson,* 46 Minn. 117, 48 N. W. 560; *Mining Co. v. Kitts,* 42 Mich. 41, 3 N. W. 240; *Redmond v. Lumber Co.,* 96 Mich. 545, 55 N. W. 1004; *Huff v. Austin,* 46 Ohio St. 386, 21 N. E. 864; *Kinkead v. Railroad,* 22 Or. 35, 29 Pac. 3; *Brownfield v. Railroad,* 107 Iowa 254, 77 N. W. 1038; *Railroad Co. v. McComas,* 7 Colo. App. 121, 42 Pac. 676; *Patton v. Railroad,* 179 U. S. 658.)

This court has repeatedly held that the proof must be confined to the allegations, in accordance with the well-settled rule that is as old as our system of jurisprudence. (*Edd v. Coal Co.,* 25 Utah 293; *Ohlenkamp v. Railroad,* 24 Utah 232 *Coates v. Railroad,* 24 Utah 304; *Peay v. Salt Lake City,* 11 Utah 331.)

RESPONDENT'S POINTS.

The evidence shows that the relation of master and servant existed between the plaintiff and the defendant within the meaning of the rule requiring a master to exercise reasonable care to prevent injury to his employees. (2 Cooley on Torts, 1015; *Rungue v. Oregon Coal Co.,* 44 Ore. 407, 75 Pac. 703; *Coal Co. v. Hays,* 97 Ala. 201, 12 So. 98; *Brophy*

v. Bartlett [N. Y.], 15 N. E. 368; Rummell v. Dillworth, 111 Pa. St. 343, 2 Atl. 355; Dean v. East Tenn. Co., 98 Ala. 586, 13 So. 489; Fritz v. Telephone Co., 25 Utah 279; Agn v. Harback, 127 Ia. 144, 102 N. W. 833; 6 Current Law, 532; 6 Thompson on Negligence, 7649.)

Speaking of the relation of master and servant: "A far greater number of cases, most of them modern and many of them recent, apply the rule of res ipsa loquitur as a rule of circumstantial evidence under appropriate conditions of fact." (Mining Co. v. Pouch, 124 Fed. 148.)

We contend that the doctrine certainly does apply to relation of master and servant, where the evidentiary facts are of a character that justify its application. The mere fact that one person is the servant of another does not prevent the application of this doctrine. "It is applicable to the relation where under the circumstances shown, the accident would not have happened if due care had been exercised." (2 Labatt, Master and Servant, sec. 834; Shea v. New York, 173 Mass. 177; Capithorne v. Hardy, 173 Mass. 400; Mooney v. Lumber Co., 154 Mass. 407; Griffin v. Boston & A. Ry Co., 148 Mass. 143; Ross v. Cotton Mills, 140 N. C. 115, 52 S. E. 121; Stewart v. Carpet Co., 138 N. C. 60, 51 S. E. 362; Wombell v. Grocery Co., 135 N. C. 474; Wright v. Railroad, 127 N. C. 225; Kinney v. Railroad Co., 122 N. C. 964; Blanton v. Dold, 109 Mo. 64; Houston v. Bush, 66 Vt. 346, 29 Atl. 380; Winkleman v. Drug Co., 88 Md. 78; The Joseph B. Thomas, 81 Fed. 578; 2 Labatt on Master and Servant, 834, and cases cited. 6 Thompson on Negligence, 7646, et seq.; 4 Thompson on Negligence, 4464; 7 Words and Phrases, 6135; Bush v. Cypress Co., 114 La. 247.)

When evidence has been admitted out of the regular order, over objection from the opposing party, upon the assurance of counsel that it will be made competent thereafter, the failure of the opposing party, to move to strike out the objectionable evidence, when such subsequent proof is not made, is a waiver of his right in the premises. (9 Ency. of Evidence, 243; United States v. Gardner, 42 Fed. 832; State v. Rothschild, 5 Mo. App. 411; Leipird v. Stotler, 97 Ia. 169;

66 N. W. 150; *McCarney v. People,* 83 N. Y. 408, 38 Am. Dec. 456.)

McCARTY, C. J.

A rehearing was granted in this case, and we have again given the questions involved careful consideration. While we are still of the opinion that the result announced in the decision heretofore filed is correct, and that the judgment must be reversed, we are convinced that the opinion, in some particulars, ought to be modified. In view of such fact, the case is decided, ruled, and controlled by this opinion only.

The action in question was brought to recover for personal injuries alleged to have been sustained by plaintiff at Williams, in the state of Montana, where she was at work for defendant as a cook in one of its outfit, or hotel, cars. The complaint alleges that plaintiff was the servant of defendant, and as such, was required to work and remain in its car as the same was situated on a side track; that while working and remaining therein, the defendant, without notice or warning to plaintiff, negligently and suddenly ran one of its engines into said car, whereby plaintiff "suffered a violent blow upon the head cutting the scalp in four places, necessitating the cutting of all the hair from her head, and rendering plaintiff unconscious for several hours, back sprained and wrenched, so that the same is still sore and lame, arms bruised and sprained, right limb injured and sprained, and internal injuries causing serious injuries to female organs; that by reason of said injuries the said plaintiff has suffered, and for all time will continue to suffer, great bodily pain   .   .   . and has been incapacitated, and for all time will be incapacitated from performing her daily work as a cook and housewife, and has been, and for all time will be, permanently crippled and scarred." The answer denies the allegations of negligence in the complaint, and affirmatively alleges contributory negligence on the part of the plaintiff. The answer further alleges that plaintiff was not a servant of the defendant; that she was permitted to be upon the car in question solely because plaintiff and one William Liffon Pugmire re-

presented themselves to be husband and wife, and defendant, having employed said William Liffon Pugmire as manager of certain outfit cars, permitted plaintiff to accompany said Pugmire and be upon the cars with him as his wife, upon the belief that she was his wife; that, in consideration of said permission, the plaintiff agreed to release defendant from all damages on account of any injury she might sustain during her residence on said cars.

It appears from the record that on July 19, 1905, at Pocatello, Idaho, the William Liffon Pugmire referred to in defendant's answer was employed by defendant company as manager of one of its outfit cars. At the time Mr. Pugmire was employed, he and plaintiff signed a release, of which the following is a copy: "Whereas, William Liffon Pugmire is employed by the Oregon Short Line Railroad Company as manager Outfit 76 on its outfit cars and lives on and about said cars, and has with him Christine Pugmire his wife; and whereas, they agree to waive and release the said railroad company from any and all rights they might otherwise have to sue and recover for damages on account of any injury to the said William Pugmire and Christine Pugmire during the continuance of such employment and residence on said cars: Now, therefore, in consideration of the permission to said William Liffon Pugmire and Christine Pugmire to be upon said cars as aforesaid, we do hereby release and forever discharge the said railroad company and its successors from any and all claim and liability for damages resulting from injuries which may be received by the said William Liffon Pugmire and Christine Pugmire while in and about the cars, trains and railroad of said company, whether received through accident or carelessness on their own part, or on the part of any employee or person, or otherwise; this release being intended to embrace and include all claims for loss of service and for disability, pain or suffering resulting directly or indirectly from any kind of injury or death."

In the evening of the same day on which he was employed, Pugmire, accompanied by his wife, the plaintiff, went with

the outfit cars mentioned to Williams, Montana, where the outfit cars were placed on a side track by defendant company. As stated by appellant in its brief: "There were several cars composing the entire outfit, some being fitted up as sleeping cars for the workmen, and then there were three cars consisting of a dining car, a kitchen or commissary car, and a bedroom. The commissary and bedroom were one car partitioned off for this different use. Pugmire was manager of the outfit, so far as the cooking and feeding was concerned. Plaintiff did the cooking, and Pugmire waited on table, and they together occupied the bedroom arranged in the commissary car, as their sleeping quarters." Plaintiff did not receive any wages for her work from the defendant, nor did her name appear upon its pay roll. At the time of the accident, the outfit was located at Williams' Siding, Mont., with the bedroom on the south end of the outfit. This room had two windows in it, one on each side, and both open at the time in question. It was about 9 o'clock in the evening, and dark. Mr. Pugmire, plaintiff, and a timekeeper named Smuttger had, for some fifteen minutes prior to the accident, been engaged in making some changes about the bed in the bedroom end of the car; and, just before the accident, the timekeeper had carried some part of the bedding or bunk out of the car. The plaintiff followed him to the west door of the commissary part of the car. There she left him and Mr. Pugmire outside of the car, and returned to the bed room. As to what then transpired, plaintiff, whose testimony is not disputed, testified as follows: "Immediately after he (referring to Smuttger) got out of the car, I heard him say: 'My God! They are running into us. Jump!' And I, being near the window, looked out and saw the headlight of the engine and heard the engine coming. . . . It did not look to me to be more than fifty or seventy five feet away at the time. It looked as if it was coming pretty fast. I started for the door, but before I got there I was knocked unconscious. I don't remember getting to the door at all. . . . I did not get out of the room. I heard no whistle

or bell. I heard nothing sounded. I just heard the rustle of the train as it was coming. . . . I was in perfect health prior to this accident. When I came to in the baggage car, my head was bound up. I had severe pains in my back, limbs, and head, and was helpless. There were bruises on my body, and my clothes were torn, and my face and head was covered with blood. Prior to this accident, I could not see with my right eye distincly, but my left eye was all right. Since the accident I cannot see to read or sew, and suffer pain in my eye. . . . It (referring to her eyesight) has been failing pretty fast since this accident." Dr. Henry La Motte, an occulist by profession, testified that some six months after plaintiff received the injuries complained of he made an examination of her eyes, and found them to be afflicted with a painful disease known as glaucoma; that in his opinion she would become totally blind in both eyes, unless a successful operation upon them were performed; that at the time he made the examination the left eye appeared to have been affected for about five or six months. After describing various causes which produce glaucoma, the doctor testified: "The next most frequent cause is some form of nervous shock. This may be either mental or physical, but it has to be a pretty severe nervous shock. The next most frequent cause is an injury to the eye itself. Sometimes a slight injury is enough to cause an acute attack of glaucoma." In answer to the question, "Judging from her condition, what was the cause of that condition, to your best opinion?" the doctor answered: "That I couldn't say. Any one of those causes could have been." He further testified that the disease could have been produced by a blow on the head such as the evidence showed plaintiff received in the collision hereinbefore mentioned.

The case was tried to a jury, and a verdict of $3,500 returned in favor of plaintiff. To reverse the judgment entered on the verdict, the defendant has appealed to this court. After the plaintiff had introduced her evidence in chief and rested her case, the defendant moved the court for a judgment of nonsuit upon the following grounds: (1) That plain-

tiff had failed to show that the relationship of master and servant existed between her and defendant; and (2) that plaintiff was guilty of contributory negligence in not heeding the warning given her to get out of the car. This motion was overruled, and, at the close of the entire case, the defendant requested the court to direct a verdict for the defendant, which request was also refused. These rulings are now assigned as error.

The record shows that, when Pugmire applied to defendant company for employent, O. D. Gefeke, who was, at the time, inspector of outfit cars for defendant, and who also had charge of the employment of cooks and managers on such cars, inquired of Pugmire whether he had a wife, and if he wanted her to be on the cars with him. Pugmire answered that he had brought his wife (plaintiff herein) with him, and stated that he wanted her to accompany him, at the same time pointing her out to Gefeke. Gefeke then stated to Pugmire that if he wanted his wife to go along they would have to sign the release hereinbefore referred to. Gefeke was called as a witness by defendant, and testified, in part, as follows: "The duties of an outfit manager are: To cook, prepare meals, order supplies, etc. As a rule we inquired whether the particular individual happened to be a cook or not. If he could not cook, then he had to furnish the cook. Where his wife accompanied him, it was taken for granted that she could cook and would assist in the work; and that was why the wife was permitted to go. When a man had his wife with him, if he could not cook, and she did the cooking, it was all right with me, and with the Short Line Company. We would not have employed Pugmire if he had not provided the cooking in some way." Plaintiff testified that from the time she arrived at Williams on the outfit cars in question (July 19, 1905) until July 22d, the day of the accident, she "cooked the food for the men of the Oregon Short Line (defendant)"; that those men took their meals at the car; and that she "did the cooking, dish washing, and straightening up around there in general"; that on two occasions the foreman of this crew of men gave her orders

respecting the kind of food she was to cook and prepare for the men; and that she carried out the orders.

It thus clearly appears—in fact, there is no conflict in the evidence on this point—that plaintiff cooked for the employees of the defendant, washed the dishes, cleaned up, and took care of the commissary and dining car, and in so doing acted as a substitute for Pugmire, and that, too, with the knowledge and approval of the defendant, and that it received the benefit of her labor. The plaintiff was not a trespasser or mere licensee, but was rightfully in the car doing work for the defendant, and, as stated, with its knowledge and acquiescence. And, furthermore, the evidence introduced by defendant shows that one of the conditions upon which it employed Pugmire was that, "if he could not cook, then he had to furnish a cook." The representative of the company whose duty it was to employ managers for defendant's outfit cars, and who employed Pugmire, testified: "We would not have employed Pugmire if he had not provided the cooking in some way." In other words, under the terms of his employment, Pugmire was obliged to either do the cooking himself or get some one to do it for him. Whether the plaintiff was in the direct employment of defendant or indirectly as the assistant of Pugmire can have no bearing on the question, because, in either event, according to the great weight of authority, the relation of master and servant existed between plaintiff and defendant within the meaning of the rule requiring a master to exercise ordinary care to prevent injury to his employees. Therefore, under the facts and circumstances disclosed by the record in this case, defendant owed plaintiff the same duty for her safety that it owed to Pugmire and its other employees. And this, too, notwithstanding the fact that plaintiff was not enitled to pay from defendant for her services. (*Wilson v. Sioux Con. Min. Co.*, 16 Utah 392, 52 Pac. 626; *Ringue v. Oregon Coal Co.*, 44 Or. 407, 75 Pac. 703; *Tennessee Coal Co. v. Hayes*, 97 Ala. 201, 12 South. 98; *Rummell Ar. v. Dilworth*, 111 Pa. 343, 2 Atl. 355, 363; *Haluptzok v. Railway Co.*, 55 Minn. 446, 57 N. W. 144, 26 L. R. A. 739;

*Aga v. Harbach,* 127 Iowa 144, 102 N. W. 808, 69 L. R. A. 255, 109 Am. St. Rep. 366; 4 Am. & Eng. Annotated Cases, 441; *Anderson v. Guineau,* 9 Wash. 304, 27 Pac. 449; 1 Shear. & Redf. Neg., 182.)

The contention that there was no evidence introduced to show that the accident in which plaintiff received the injuries complained of was due to the negligence of the defendant company is not borne out by the record. The undisputed evidence shows that the outfit cars in which plaintiff was injured were fitted up and placed and stationed by defendant on one of its side tracks for the use and occupation of plain tiff and certain employees of the company. And plaintiff had a right to assume that defendant would exercise ordinary and reasonable care to prevent these cars from being run into by its switch engines and passing trains. The record, as it now stands, shows that an engine propelled on defendant's railroad tracks was, without warning or signal, run onto this side track and into the outfit cars. It also appears from the undisputed evidence that, when plaintiff discovered that the engine mentioned was about to collide with the outfit cars, she immediately endeavored to leave the car, but was unable to do so before the collision. Under these facts and circumstances, the question of neligence on the part of the defendant company and of contributory negligence on the part of the plaintiff were questions of fact for the jury to determine; and the jury having, under proper *instructions by the court,* found against defendant on these issues, the findings are final and cannot be disturbed by this court.

The defendant requested the court to instruct the jury that, in case they found that the release hereinbefore mentioned was "entered into without fraud or deceit on the part of the defendant, then the plaintiff would be bound by the terms of said release and would not be entitled to recover in this action," etc. The refusal of the court to so instruct the jury is now assigned as error. We think this assignment is without merit. The law is well settled that a master cannot, by contract in advance, absolve himself from liability

(which would exist if no contract were made) for injuries
to his servant caused by the master's own negligence. The
ground upon which such contracts are held to be void is
that they are against public policy. The reason for the rule
is well stated in the case of *Railway Co. v. Spangler,* 44 Ohio
St. 471, 8 N. E. 467, 58 Am. Rep. 833, wherein it is said.

"The policy of our law being well settled, it only remains for us to
inquire whether railroad companies may ignore or contravene that
policy by private compact with their employees, stipulating that they
shall not be held to a liability for the negligence of their servants which
public policy demands should attach to them. The answer is obvious. Such
liability is not created for the protection of the employees simply, but
has its reason and foundation in a public necessity and policy which
should not be asked to yield or surrender to mere private interests
and agreements."

The same question was before this court in the case of
*Stone's Adm'r v. Union Pac. Rd. Co.,* 89 Pac. 715, and in
an opinion written by Mr. Justice Straup it is said:

"The decided weight of authority in this country sustains the
proposition that a contract whereby an employee agrees in advance
to relieve his employer from liability for injuries resulting from the
latter's negligence, or that of his employees, when he is, by the law of
the jurisdiction, responsible for their negligence, is void as against
public policy."

Numerous authorities are cited in the opinion, which de-
clare the same doctrine.

During the progress of the trial the plaintiff was asked,
upon cross-examination, if she and Pugmire were married.
Objection was made to this question and others of like char-
acter on the ground that they were immaterial and not cross-
examination. The objections were sustained, and exceptions
were noted by defendant. The rulings of the court in sus-
taining the objections are assigned as error. We think the
court did right in sustaining the objections. The defendant's
liability or nonliability in no way depended upon the marital
relationship existing between plaintiff and Pugmire, but de-
pended upon the question of defendant's negligence and upon
the relationship existing between it and plaintiff at the time
the accident occurred. If Pugmire were suing the company

to recover damages for the loss of services of Mrs. Pugmire as his wife, the relationship existing between them might be material; otherwise not.

The next error assigned relates to the admission of evidence, over defendant's objection, of the diseased condition of plaintiff's eyes since the collision. It is contended that since plaintiff enumerated in her complaint the injuries for which she claimed damages, and made no averment of any injury to her eyes, it was error for the court to admit evidence of their diseased condition. The injuries alleged in the complaint are: (1) A violent blow upon the head cutting the scalp in four places; (2) back sprained and wrenched, so that the same is still sore and lame; (3) arms bruised and sprained; (4) right limb injured and sprained; and (5) internal injuries causing serious injury to the female organs. And the result or consequences of these injuries, as alleged in the complaint, are: (1) That the plaintiff has suffered, and for all time will suffer, great bodily and mental pain and anguish; (2) that she has been, and for all times will be, incapacitated from performing her daily work as a cook and housewife; and (3) plaintiff has been, and for all time will be, permanently crippled and scarred. Here we have each specific injury, as well as the consequences flowing therefrom, upon which plaintiff relies for recovery, set out in detail and minutely described. It will be noticed that no mention is made of any injury to plaintiff's eyes; nor is there any allegation in the complaint from which it could be reasonably inferred that her eyes were injured at the time the collision in question occurred, or that they afterwards, as a result of the injuries received, became diseased and the sight impaired. When the evidence on this point was offered, and objections made thereto, counsel for plaintiff stated to the trial court that they did not claim that there "was any direct injury to her eyes;" and, further, that "the disease has developed even since this suit was commenced with more or less rapidity." If plaintiff, at the time she commenced her action, was not aware that she had received injuries which later on would produce a disease to her eyes, how can it be said

that defendant was bound to anticipate that consequences of this character might result from the injuries described, and damage be claimed therefor, especially in view of the fact that plaintiff had specifically pointed out in her complaint the injuries received and had in detail alleged the particular consequences flowing therefrom upon which she based her claim for damages? The very purpose of written pleadings on the part of the plaintiff is to advise the defendant of the nature and extent of the claim made against him, and thereby give him an opportunity to prepare to meet it at the trial if he so desires. This doctrine is well illustrated by Mr. Pomeroy, in his work on Code Remedies, at section 554, in the following language.

"The very object and design of all pleading by the plaintiff, and of all pleading of new matter by the defendant, is that the adverse party may be informed of the real cause of action or defense relied upon by the pleader, and may thus have an opportunity of meeting and defeating it if possible at the trial. Unless the petition or complaint on the one hand, and the answer on the other, fully and fairly accomplishes this purpose, the pleading would be a useless ceremony, productive only of delay, and the parties might better be permitted to state their demands orally before the court at the time of the trial. The requirement therefore that the cause of action or the affirmative defense must be stated as it actually is, and that the proofs must establish it as stated, is involved in the very theory of pleading."

Tested by this rule, which is founded upon the fundamental principles of written pleadings in civil actions, the complaint, as framed, was no notice to the defendant that damage for injuries to plaintiff's eyes would or might be claimed. Therefore defendant was not bound to anticipate and be prepared to meet a claim of such a character. We do not wish to be understood as holding that in personal injury cases the plaintiff must in his complaint describe in detail every bruise, sprain, and wound he may have suffered because of the wrongful act complained of in order to introduce proof thereof. Nor do we mean to say that the plaintiff cannot, under the general allegations of his complaint, introduce proof of all damages that usually and ordinarily result from the wrongful act alleged, or from the nature and kind of injuries

described. What we do say is this: Where, as in this case, the particular injuries and the consequences resulting therefrom upon which the plaintiff relies for a recovery are specifically alleged and pointed out, he cannot prove and recover for an element of damages not alleged, and which could not be reasonably inferred as flowing from the injuries described in the complaint. Respondent, however, insists that the evidence in question was admissible under the general allegation that the plaintiff "has been incapacitated from performing her daily work as a cook and housewife." The loss of respondent's eyesight would, it must be conceded, incapacitate her from performing her daily work as a housewife. So would the amputation of her arms, which she alleges were bruised and sprained. But we do not think it would be seriously contended that if, as a result of the injuries to plaintiff's arms, amputation had become necessary to save her life, this could be proved under the allegations of the complaint as framed. And yet, as we view the complaint, proof of amputation would be more nearly within the issues than the evidence under consideration, because injury to the arms is alleged, whereas there is no mention of any disease or injury to the eyes, nor is there any allegation from which such injury can reasonably be inferred. It is therefore an element of damages which the defendant could not reasonably be expected to have anticipated and be prepared to meet from the facts alleged.

Counsel for respondent, in support of their contention that the evidence was admissible, cite and rely on the case of *Croco v. O. S. L. R. Co.,* 18 Utah 311, 54 Pac. 985, 44 L. R. A. 285. In that case, which was an action for personal injuries, the plaintiff was permitted to testify that his memory was not so good after the accident as it was before, and that he could not see out of his right eye. On appeal, this court held that, under the allegations of the complaint, it was not error for the trial court to admit evidence of this character. By an examination of the record in that case, it will be seen that the allegations of the complaint were general in character, and not specific, as in this case. The complaint in that

case, after reciting the facts constituting the alleged negligence of the defendant, contained the following general allegation: "The said plaintiff became greatly and permanently injured, cut, and disfigured in and upon his head, back, arms, and legs, and received injuries in other parts of his body, and was internally injured in the region of his back and abdomen, and thereby . . . plaintiff became sick, sore, and disordered and crippled for life, from which injuries the said plaintiff suffered great mental distress and physical pain," etc. According to the great weight of authority, the plaintiff, under these allegations, was entitled to prove all damages suffered by him that ordinarily and usually flow from injuries of the character therein described, and it was proper for the trial court to admit evidence of the impairment of plaintiff's memory and injury to his eyes which were the natural and direct result of the wrongful acts alleged and of the injuries described. But the complaint under consideration does not contain averments of such general character. What counsel contend are such general averments are allegations which relate to and specifically point out the consequences of the injuries described. We recognize and approve the well-settled rule that, where a complaint in a personal injury case contains general as well as specific allegations of the injuries received and of the damages resulting from such injuries, the plaintiff is not limited in his proof to the injuries specifically alleged, but may prove any and all damages which usually and ordinarily flow from injuries of the kind and character described in the general averments of the complaint. In the case under consideration, however, as we have hereinbefore pointed out, the injuries received, as well as the consequences resulting therefrom for which damages are claimed, are specifically alleged and enumerated, and there being no general averments of the character indicated, in fairness to the defendant, the plaintiff should have been limited in her proof to the injuries alleged in her complaint. This was not done. Permitting the plaintiff to introduce the evidence objected to naturally tended to take the defendant by surprise and to prove an element of damages of which it

had no notice. (2 Sutherland on Damages [3d Ed.], 421; *Thompson v. St. L. & S. Ry. Co.,* 111 Mo. App. 465, 86 S. W. 465; *Arnold v. City of Maryville,* 110 Mo. App. 254, 85 S. W. 107; *Internat'l & G. N. R. Co. v. Thomson* [Tex. Civ. App.], 37 S. W. 24; *G. C. & F. Ry. Co. v. Warlick,* 1 Ind. T. 10, 35 S. W. 235; *Piltz v. Yonkers R. Co.,* 83 App. Div. 29, 82 N. Y. Supp. 220; *Scaley v. Met. St. Ry. Co.,* 78 App. Div. 530, 79 N. Y. Supp. 677; *Dittman v. Edison Elec. Illum. Co.,* 87 App. Div. 68, 83 N. Y. Supp. 1078; *Goeghegan v. Third Ave. R. Co.,* 51 App. Div. 369, 64 N. Y. Supp. 630; *Kleiner v. Third Ave. R. Co.,* 162 N. Y. 201, 56 N. E. 497.)

It follows from what we have said that the court erred in admitting the testimony in question, and, as it could not have been other than prejudicial to the interests of appellant, the case must be reversed. It is so ordered. The trial court is directed to permit the parties to amend their pleadings should they so desire. Costs of this appeal to be taxed against respondent.

STRAUP and FRICK, JJ., concur.