Michele EDGIN and Tracy Edgin *v.*
ENTERGY OPERATIONS, INC.

97–264                                        961 S.W.2d 724

Supreme Court of Arkansas
Opinion delivered January 22, 1998

*Dunham & Faught, P.A.*, by: *James Dunham*, for appellants.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Julia L. Busfield*, for appellee.

DONALD L. CORBIN, Justice. Appellants Michele and Tracy Edgin filed a negligence action against Appellee Entergy Operations, Inc., for injuries that Michele Edgin sustained while working at Entergy's nuclear plant in London as a security guard. During the time she was working at the nuclear plant, Michele Edgin was employed by the Wackenhut Corporation. Appellants appeal the order of the Pope County Circuit Court granting Entergy's motion for summary judgment. Appellants argue that the trial court erred in granting summary judgment on the basis of an agreement contained in Michele Edgin's employment application, which forecloses any action by Edgin against Wackenhut's clients for injuries sustained by her that are compensable under the Workers' Compensation Act. This question is one of first impression; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(17)(i). We find no error and affirm.

The amended complaint reveals the following facts. On or about April 15, 1995, Appellant Michele Edgin was employed by Wackenhut as a security officer. Wackenhut had been employed by Entergy to provide security services at its nuclear plant in London. Edgin had been assigned to work at Entergy's nuclear plant and was to perform security checks on the doors inside the plant. She was trained to go through the door, make sure that the door was secured, make her presence known, and then move on

to the next door to be checked. Each door to be checked was pressurized by creating a vacuum from the inside. On the date in question, Edgin was making a routine check of one of the doors when, upon trying to open the door, she found that the pressure was too high and that the door could not be pulled open. While attempting to open the door a second time, the vacuum on the other side of the door slammed the door shut, causing Edgin to lose her grip and her body to slam against an iron object behind her. As a result, Edgin suffered physical injuries.

Edgin alleged in her complaint that Entergy had sole and exclusive control on the amount of pressure to be placed inside each door. She alleged further that the door she was trying to open when she was injured had been "written up" on at least two previous occasions as being difficult to open or for having caused false alarms for one reason or another. Edgin alleged that Entergy had a duty to keep the pressure adjusted so that routine security checks could be made by employees of Wackenhut, and that the breach of this duty was the proximate cause of her injuries. Edgin alleged damages for injuries to her lower back in excess of $9,000, a loss of earnings and earning capacity in excess of $100,000, and expenses for pain and suffering in excess of $50,000. Tracy Edgin claimed that as a result of the injuries to his wife, he had sustained a loss of consortium entitling him to damages in excess of $50,000.

Entergy filed a motion for summary judgment, arguing that Michele Edgin was an employee of Wackenhut at the time of the accident and that she had already received workers' compensation benefits for her injuries. Entergy contended that the claim was barred because Edgin had signed an agreement in consideration of her employment in which she specifically waived and forever released any right that she might have had in the future to make claims or bring suit against any client of Wackenhut for damages based upon injuries covered under workers' compensation laws. Exhibit "A" attached to the motion for summary judgment was a photocopy of the agreement, contained on the last page of Edgin's employment application, which provides in pertinent part:

> (2) in recognition of the fact that any work related injuries which might be sustained by me are covered by state Workers' Compen-

sation statutes, and to avoid the circumvention of such state statutes which may result from suits against the customers or clients of Wackenhut based on the same injury or injuries, and to the extent permitted by law, *I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE* to make claims or bring suit against any client or customer of Wackenhut for damages based upon injuries which are covered under such Workers' Compensation statutes.

Entergy also argued that Tracy Edgin's claim of loss of consortium was derivative of and extinguished by the release and waiver signed by Michele Edgin. The trial court granted Entergy's motion, and this appeal followed.

The standard for appellate review of a summary judgment is whether the evidentiary items presented by the moving party in support of the motion left a question of material fact unanswered and, if not, whether the moving party is entitled to judgment as a matter of law. *R.J. Jones Excavating Contr., Inc. v. Firemen's Ins. Co.*, 324 Ark. 282, 920 S.W.2d 483 (1996). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

The sole issue on appeal is whether the agreement signed by Michele Edgin is enforceable by Entergy. It is a well-settled principle of law that a contract made for the benefit of a third party is actionable by such third party. *See, e.g., Howell v. Worth James Constr. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976); *Cate v. Irvin*, 44 Ark. App. 39, 866 S.W.2d 423 (1993). It is not disputed that Entergy was a third-party beneficiary of the agreement signed by Edgin, despite the fact that Entergy was not specifically identified in the agreement by name. Entergy would no doubt benefit from such an agreement, whereby Wackenhut intended to shield its clients from being held liable for injuries to Wackenhut employees assigned to perform jobs for such clients, provided that the injuries were covered by this state's workers'

compensation laws. Thus, the question here is not whether the agreement may be enforced by Entergy, but rather, whether the agreement is capable of being enforced against Edgin.

■ ■ The common law pertaining to master and servant has long recognized that an employer or master may not, by contract in advance, absolve itself from liability for injuries sustained by its employee or servant that are caused by the employer's or master's own negligence. *See, e.g., Pittsburgh, C., C. & St. L. Ry. Co. v. Kinney,* 115 N.E. 505 (Ohio 1916); *Pugmire v. Oregon Short Line R.R. Co.,* 92 P. 762 (Utah 1907). Such agreements were considered to be void as against public policy. *Id.* The agreement at issue in this case does not, however, purport to absolve the employer of any and all liability. Instead, it provides that in exchange for employment, the employee relinquishes any additional claims for work-related injuries, which are covered by workers' compensation benefits, against the employer's clients or customers. Accordingly, the agreement is not by virtue of its contents per se void as being against public policy.

■ ■ The issue then is whether the language of the agreement clearly identifies that which the employee is relinquishing in exchange for employment. The parties agree on the general principle that contracts that exempt a party from liability for future negligence are not favored by the law and are strictly construed against the party relying on them. *Farmers Bank v. Perry,* 301 Ark. 547, 787 S.W.2d 645 (1990). In *Farmers Bank,* the issue on appeal was the admissibility of an exculpatory clause in the bank's rental agreement for a safety deposit box signed by the appellees, which provided that the "undersigned customer holds the Farmers Bank harmless for loss of currency or coin left in this box." *Id.* at 550, 787 S.W.2d at 646. In holding that the trial court was correct in excluding the signature card from the jury, this court stated that it "has never upheld an agreement purporting to release a party from liability for his own negligence before it occurred." *Id.* This court went on to state:

> The rationale behind the numerous decision [sic] invalidating so-called releases given before liability arises is based upon the strong public policy of encouraging the exercise of care. When construing such release contracts, this court has said that it is not

> impossible to avoid liability for negligence through contract; however, *to avoid such liability, the contract must at least clearly set out what negligent liability is to be avoided.*

*Id.* at 550-51, 787 S.W.2d at 646-47 (citations omitted) (emphasis added). This court concluded that the language of the exculpatory clause on the signature card did not expressly exempt the bank from liability for its own negligence, as it did not clearly set out what negligent liability was to be avoided.

Similarly, in *Firstbank of Arkansas v. Keeling,* 312 Ark. 441, 850 S.W.2d 310 (1993), this court declined to reverse the trial court's ruling that the contract between Firstbank and the insurance company did not release the bank from any liability for its fraud or deceit. This court stated that there was no authority to support the bank's argument that an agreement may effectively exonerate one from liability for fraudulent conduct in inducing another to enter into a contract. This court stated that the reason for disfavoring such agreements is based upon the public policy of encouraging the exercise of reasonable care. "While it is not impossible for such an agreement to be enforceable, the clause must clearly set out the negligence for which liability is to be avoided." *Id.* at 445, 850 S.W.2d at 313 (citing *Farmers,* 301 Ark. 547, 787 S.W.2d 645).

Appellants argue that the agreement in this case does not specifically set out what negligent liability is to be avoided. We disagree. We are persuaded by Appellee's argument that the agreement is clear and unambiguous and only releases the clients of Wackenhut from liability for work-related injuries sustained by a Wackenhut employee that are covered by the workers' compensation statutes. By signing the employment application, an employee is not forfeiting his or her right to receive *any* compensation for work-related injuries; rather, the employee is merely agreeing to waive an *additional* remedy against a client of Wackenhut in exchange for employment with Wackenhut. In this respect, we cannot say that the agreement violates public policy by discouraging the employer or its clients from exercising reasonable care. Nor can we say that the language of the agreement did not clearly identify what the employee was giving up in exchange for employment. The employer is not attempting to escape liability

entirely, but is, instead, attempting to shield its clients from separate tort liability for those injuries that are covered by workers' compensation, unlike the agreements at issue in *Farmers Bank* and *Firstbank*.

Furthermore, our interpretation of this agreement is not inconsistent with the sound public policy considerations that form the basis of our workers' compensation laws. Nor is it inconsistent with this court's previous holdings in *Daniels v. Riley's Health & Fitness Ctrs.*, 310 Ark. 756, 840 S.W.2d 177 (1992), and *National Union Fire Ins. v. Tri-State Iron & Metal*, 323 Ark. 258, 914 S.W.2d 301 (1996), which involved the application of the dual-employment doctrine. In both of those cases, this court held that the workers, who were employed by temporary employment agencies and were injured while working their assigned jobs for a special employer, were not entitled to bring suit against those special employers, as such claims were barred by the exclusive-remedy provision of our Workers' Compensation Act.

■ Appellants additionally argue that the agreement contains factually inaccurate information, in that it states that any work-related injury is covered by workers' compensation. We are not persuaded by this argument. When the agreement is read *in toto*, it is clear that the employee agrees to waive any rights she might have to bring suit against a client of Wackenhut *only if* the injuries sustained by the employee are in fact covered by workers' compensation. Here, there is no dispute that Michele Edgin received workers' compensation benefits for the injuries in question. Accordingly, under the terms of the agreement, she is precluded from bringing suit against Entergy for those same injuries, as Entergy is a client of Wackenhut.

■ Lastly, Appellants contend that the trial court's ruling must be reversed because Entergy failed to demonstrate the authenticity of the agreement, which was attached as an exhibit to its motion for summary judgment. During oral argument before this court, Appellants argued that it was error for the trial court to grant summary judgment on the basis of an unauthenticated document. We do not reach the merits of this argument, because Appellants failed to make this specific objection below. An appel-

lant must make a specific objection that apprises the trial court of his or her current argument and may not change the argument on appeal. *Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997). Absent such a specific objection informing the trial court of the nature of the error alleged on appeal, this court will not reverse. *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996).

Here, the only time that the authentication of the document was even remotely discussed was through two ambiguous references made by Appellants in their brief filed in response to Entergy's motion for summary judgment. Appellants did not raise the issue as a separate point in the response itself, nor did they support the references made in their brief with any argument or authority, such that the trial court would have perceived that they were specifically challenging the authenticity of the exhibit. Clearly, such an argument could have been directly made if it was in fact a disputed issue.

Affirmed.

NEWBERN, GLAZE, and IMBER, JJ., dissent.

NEWBERN, J., dissents because the agreement at issue violates the policy of encouraging the exercise of reasonable care.

TOM GLAZE, Justice, dissenting. I respectfully disagree with the majority opinion. In my view, the opinion contravenes statutory law, public policy, and case law. In short, the opinion adopts a rule which will be coercively applied against employees, whereby employers can compel employees, in exchange for hiring them, to waive any right of redress for any injury sustained resulting from a negligent act of the employers' clients or customers. If employees refuse to waive their rights, they simply will not be hired, or if already employed, will lose their jobs.

Initially, Entergy's argument is beguiling. It says Michelle Edgin, when applying for a job with her employer Wackenhut Corporation, agreed to waive her claim for any job-related injury she may sustain resulting from the negligence of one of Wackenhut's customers, because Edgin would already be receiving Workers' Compensation benefits for the injury. The waiver, however, makes *no* mention that the Workers' Compensation law specifi-

cally provides that her making a claim for Workers' Compensation benefits *shall not* affect her right as an employee to sue *any third party* who may have negligently caused her injury. *See* Ark. Code Ann. § 11-9-410 (Repl. 1996). (Emphasis added.)

Indisputedly, any agreement whereby an employee waives his right to compensation benefits is invalid. Ark. Code Ann. § 11-9-108(a) (Repl. 1996). Section 11-9-108(a) also provides that no contract shall operate to relieve the employer or carrier, in whole or in part, from liability under Chapter 9 of the Workers' Compensation law. This statutory provision is designed to protect employees against the practice of unscrupulous employers to avoid compensation liability by having employees sign a contract waiving all their rights to compensation in consideration of being employed. *Bryan v. Ford, Bacon & Davis,* 246 Ark. 327, 438 S.W.2d 472 (1969).

While in the present case, Michelle was not asked by Wackenhut to waive her compensation benefits in exchange for an opportunity to work, she was requested, before hiring her, to release any legitimate negligence action she would have against Wackenhut's customers. Wackenhut, by law, must furnish its employees Workers' Compensation coverage and that law in no way authorizes it, as an employer, to protect its customers against liability those customers may have under § 11-9-410(a). Surely employer Wackenhut should not be able to entice business customers by assuring them immunity from suit that might arise under § 11-9-410(a). Wackenhut should not be able to force an employee to waive in futurity his or her statutory right against a third-party tortfeasor in exchange for Wackenhut giving a job to the employee. Arkansas statutory law establishes public policy, *see Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380 (1988), and here that law and policy gives an employee the right to maintain an injury action in court against any third party, and Wackenhut, or any employer, has no authority to divest its employees of that right.

Even if Wackenhut's waiver provision was not void as against public policy, another reason requires the trial court's reversal. I would add that this court has never upheld an agreement purport-

ing to release a party from liability for his own negligence before it occurred. *Firstbank of Ark. v. Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993). The reason for disfavoring such clauses is based upon the public policy of encouraging the exercise of reasonable care. *Id.* at 445. While it is not impossible to avoid liability through contract, the contract must at least clearly set out what negligent liability is to be avoided. *Middleton & Sons v. Frozen Food Lockers*, 251 Ark. 745, 474 S.W.2d 895 (1972). Contracts which exempt a party from liability for negligence are not favored by the law, and they are strictly construed against the party relying on them. *Farmers Bank v. Perry*, 301 Ark. 547, 787 S.W.2d 645 (1990); *Gulf Compress Company v. Harrington*, 90 Ark. 258, 119 S.W. 249 (1909).

In her application for employment with Wackenhut, Michelle Edgin signed the following release or waiver which reads in pertinent part:

> In recognition of the fact that any work-related injuries which might be sustained by me are covered by state Workers' Compensation statutes, and to avoid the circumvention of such state statutes which may result from suits against the customers or clients of Wackenhut based on the same injury or injuries, and to the extent permitted by law, I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE to make claims or bring suit against any client or customer of Wackenhut for damages based upon injuries which are covered under such Workers' Compensation statutes.

Entergy argues that the release is clear and unambiguous and therefore valid. However, the clause stating that "any work related injuries which might be sustained by me are covered by state Workers' Compensation statutes" is erroneous and misleading. Not all work-related injuries are covered by workers' compensation. Further, the clause does not clearly set out what negligent liability is to be avoided. Taken literally, this language could release Entergy for even intentional torts. Again, such an interpretation would be against public policy.

IMBER, J., joins this opinion.