2010 Ark. App. 427

**Kristin KUELBS, Donald Hill, and Edwardena Hill, Appellants**

v.

**Kimberly HILL, Appellee.**

**No. CA 09–231.**

Court of Appeals of Arkansas.

May 12, 2010.

Justin Bryum Hurst, Donald C. Hill, Hot Springs, for appellants.

Tylar Charles Marshall Tapp III, Hot Springs, for appellee.

WAYMOND M. BROWN, Judge.

Appellant Donald Hill and appellee Kimberly Hill filed competing petitions for guardianship or conservatorship of their adult sister, Kristin Kuelbs.[1] The circuit

1. Donald's wife, Edwardena Hill, joined his petition. However, for the sake of conven-

judge appointed an attorney ad litem for Kristin and ordered Dr. Paul Deyoub to evaluate Kristin's psychological condition. Dr. Deyoub determined that Kristin was incapacitated due to mental illness and needed a guardian of her person and her estate, neither of whom should be a family member. In accordance with the doctor's recommendation, the court named social worker Valerie Swearingen as the guardian of Kristin's person and First National Bank of Hot Springs as the guardian of Kristin's estate. Donald, who is a licensed attorney, appeals from that order [2]on behalf of himself and Kristin, asserting that the circuit court erred by 1) appointing an attorney ad litem for Kristin; 2) failing to dismiss Kimberly's guardianship petition; 3) failing to strike Dr. Deyoub's testimony; 4) granting Kimberly's motion for a protective order; 5) appointing First National Bank as the guardian of Kristin's estate; and 6) failing to recuse. Donald also appeals from an order directing him to pay $625 of the attorney ad litem's fees. For the reasons set forth below, we dismiss Donald's appeal from the attorney-fee order and affirm the remainder of the circuit court's rulings.

## I. *Background facts*

In 2001, Kristin Kuelbs suffered head injuries in an automobile accident. In 2006, her sister Kimberly and two other siblings, Jeff and Carol, asked a Wisconsin court to order an examination of Kristin, claiming that she had poured hot coffee over one sister's head and that she had talked about shooting her sisters and her mother and killing herself. A Wisconsin facility conducted a three-month evaluation and determined in February 2007 that Kristin could function in a less-restrictive environment. Based on representations by Kristin's brother Donald that he would allow Kristin to live with him in Arkansas and would assist with her medical needs, the Wisconsin court dismissed the matter. Kristin then moved to Garland County, Arkansas, to live with Donald and gave Donald her power of attorney.

On November 20, 2007, Kimberly, a Minnesota resident, filed a petition in Garland County Circuit Court asking to be appointed as Kristin's guardian. Kimberly alleged that Kristin suffered from craniocerebral trauma as the result of her accident; that she was paranoid, [3]combative, and out of control; that she lacked the capacity to care for herself; and that the guardianship petition was supported by all of Kristin's siblings "with the exception of one whom [it] is believed absconded with many of [Kristin's] funds." Kristin responded through her attorney, Justin Hurst, asking that the petition be denied. Her response also contained a "counter-petition for appointment of a conservator" filed by Hurst on behalf of Donald. The counter-petition alleged that Kristin was physically incapacitated due to her accident; that Kristin consented to Donald's appointment as conservator; and that the other siblings had attempted to "swindle" Kristin's assets. Attached to the pleading was Kristin's affidavit accusing her family members of taking over $200,000 of her money and consenting to Donald's appointment as conservator. The court eventually disqualified Hurst from representing Kristin and appointed Michelle Strause as Kristin's attorney ad litem.

Thereafter, Kristin and Donald, acting through their separate attorneys, filed motions to dismiss Kimberly's guardianship petition. Kristin asserted that she wanted to live with Donald and that she was not mentally incapacitated. Donald claimed that the Wisconsin court had actually ap-

ience, we will refer only to Donald.

pointed him as Kristin's guardian (a claim that would later prove false) and that Kimberly's petition contained certain procedural flaws. Following a hearing, the court, without expressly ruling on the motions to dismiss, ordered Kristin to undergo a psychological evaluation performed by Dr. Paul Deyoub. Near this same time, Donald, who had obtained his law license, entered an appearance as Kristin's attorney. The court accepted his appearance but retained Michelle Strause as Kristin's attorney ad litem.

Dr. Deyoub conducted a brief evaluation of Kristin, in which he diagnosed her with "Bipolar Disorder, Manic, Severe with Psychotic Features" and concluded that she was incapacitated due to mental illness. The doctor also stated that Kristin needed a guardian of her person and her estate; that the guardian should not be a family member; and that the guardianship should be "limited and defined so that she retains independence in all areas except her estate and her mental health treatment." Dr. Deyoub testified to his findings at an August 28, 2008 hearing.

On October 8, 2008, the circuit court, relying on Dr. Deyoub's evaluation, appointed social worker Valerie Swearingen as the guardian of Kristin's person for the limited purpose of making medical decisions and appointed First National Bank of Hot Springs as the guardian of Kristin's estate. On October 17, 2008, Donald filed a notice of appeal on Kristin's behalf and on his own behalf, challenging the court's guardianship ruling and several intermediate rulings. We turn now to appellants' arguments for reversal.

## II. *Appointment of attorney ad litem*

■ Appellants argue that the circuit court erred in appointing an attorney ad litem for Kristin when she had already employed counsel of her own choosing. We review the circuit court's decision to appoint an attorney ad litem for an abuse of discretion.[2]

■ Appellants contend first that the appointment of an attorney ad litem violated Kristin's constitutional right to counsel of her own choosing. The right to counsel of choice is grounded in the Sixth Amendment to the United States Constitution and in article 2, section 10 of the Arkansas Constitution.[3] Both constitutional provisions apply by their terms to "all criminal prosecutions." Consequently, there is some doubt as to their applicability in a civil case.[4] But even where they do apply, we have recognized that the right to counsel of one's choice is not absolute and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice.[5]

Here, the effective administration of justice may well have warranted a restriction on Kristin's right to choose her own counsel. As the proposed ward, Kristin initially elected Justin Hurst as her counsel. Her choice was not problematic in and of itself, but it became so when Hurst was engaged to represent Donald, who opposed Kristin's need for a guardian, who himself wanted to become her conservator, and who was accused of misappropriating her assets. Given the circumstances in this hotly contested case, the court wisely chose to provide Kristin with her own at-

---

2. *Martin v. Pierce,* 370 Ark. 53, 257 S.W.3d 82 (2007).

3. *Price v. State,* 2009 Ark. App. 664, 344 S.W.3d 678.

4. *See, e.g., Droste v. Julien,* 477 F.3d 1030 (8th Cir.2007).

5. *Price, supra.*

torney, who was wholly independent of those competing for her care and custody and who could give Kristin undivided loyalty in this adversarial proceeding. The record reflects that, in fact, the attorney ad litem staunchly represented Kristin by moving to dismiss the guardianship petition and by opposing the need for an additional psychological evaluation. We also note that the court later allowed Donald to represent Kristin during a significant portion of the case. Accordingly, her right to choose her own counsel was curtailed only slightly.

■ Next, appellants argue that the court's appointment of the attorney ad litem violated Canon 3(C)(4) of the Arkansas Code of Judicial Conduct, which provides that a judge "shall not make unnecessary appointments." We disagree that a violation occurred. Given the circumstances described in the preceding paragraph, we find it hard to fault the court for deciding that an attorney ad litem was necessary to protect Kristin's rights. Furthermore, Canon 3(C)(4), when read in its entirety, is directed at assuring that judges make appointments based on merit rather than on nepotism or favoritism.

■ Appellants contend further that the attorney ad litem's appointment violated Ark. R. Civ. P. 17(b), which provides that

[t]he court shall *appoint a guardian ad litem for an infant or incompetent person not otherwise represented* in an action or shall make such other order as it

deems proper for the protection of the infant or incompetent.

(Emphasis added.) Appellants claim that Kristin was "otherwise represented" by legal counsel when the court appointed the attorney ad litem. However, Rule 17(b) involves the appointment of a *guardian* ad litem as a party rather than an attorney ad litem as legal counsel. The two roles are distinct.[6] Thus, no violation of Rule 17(b) occurred.

For these reasons, we conclude that the court did not abuse its discretion by appointing an attorney ad litem.

### III. *Motions to dismiss guardianship petition*

Appellants argue that the circuit court should have dismissed Kimberly's guardianship petition because the petition offered no proof of Kristin's incompetency and failed to state that Kimberly, a nonresident of the state, had named a resident agent for service of process. Our standard of review is whether the circuit court abused its discretion in denying the motion to dismiss.[7] We find no abuse of discretion on this point.

■ We note at the outset that the order appealed from in this case did not grant Kimberly's motion to be appointed guardian. Appellants' arguments are therefore academic for purposes of this appeal.[8] In any event, appellants' arguments are not persuasive. Arkansas law does not require a potential guardian to attach, to the guardianship petition, a letter or other proof of the proposed ward's incompetency, as appellants suggest.[9] The

---

6. *See Garver v. Utyesonich*, 235 Ark. 33, 356 S.W.2d 744 (1962).

7. *Ark. Dep't of Envtl. Quality v. Oil Producers of Ark.*, 2009 Ark. 297, 318 S.W.3d 570.

8. *Cooper Tire & Rubber Co. v. Angell*, 75 Ark. App. 325, 58 S.W.3d 396 (2001) (holding that

this court does not decide academic questions).

9. Ark.Code Ann. § 28–65–205(b) (Repl.2004) (listing thirteen items that the "petition shall state").

petition need only recite the nature of the proposed ward's incapacity or disability, which was done here.[10] Further, even though the law requires a nonresident guardian to appoint a resident agent for service of process,[11] our guardianship statutes do not require the guardianship petition to declare that this has been accomplished.[12]

### IV. *Protective order*

■ After trying unsuccessfully to schedule Kimberly's deposition, Donald's attorney, Justin Hurst, gave notice to Kimberly for a deposition in Garland County on April 14, 2008. Kimberly moved for an order of protection claiming, among other things, that she had transportation issues in arranging travel from Minnesota to Arkansas. The court issued a protective order, stating that "the Deposition of the Petitioner, Kimberly Hill shall not occur on April 14, 2008." Appellants argue on appeal that the protective order deprived them of their right to conduct discovery. We disagree.

The protective order decreed that the deposition would not take place on April 14, 2008. It did not otherwise restrict appellants' discovery, which left appellants free to reschedule the deposition during the remaining months of the case, should they choose to do so. We therefore cannot say that the court committed an abuse of discretion warranting reversal.[13]

### V. *Failing to strike Dr. Deyoub's testimony*

At a July 28, 2008 hearing, the court announced that the parties had met in chambers to resolve the matter of Kristin's

competency. On the record, the court ordered an evaluation of Kristin by Dr. Paul Deyoub, and a discussion ensued regarding the best manner in which to obtain Kristin's records from the state of Wisconsin for Dr. Deyoub's use. Donald said that he understood Dr. Deyoub's evaluation would not be influenced by other medical records. The court stated that it would let Dr. Deyoub "do what he normally does" and that "if he wants more information, he'll ask for it." The court then entered an order directing the evaluation to occur within five business days. The order did not restrict Dr. Deyoub's receipt of information from any source.

Dr. Deyoub conducted the evaluation on August 12, 2008. Before doing so, he spoke with Kimberly, Donald, and another of Kristin's siblings, and received voluminous documents from the siblings (other than Donald) regarding Kristin's previous mental-health problems. In the evaluation itself, the doctor found that Kristin was unable to adequately understand her financial affairs and that she was "belligerent, angry, and beyond any degree of reason." As previously mentioned, he diagnosed Kristin with bipolar disorder, manic, severe with psychotic features, and he stated that she experienced, among other things, flight of ideas, distractibility, paranoia, derailed thinking, and raging anger and hostility. The doctor also concluded that Kristin's judgment was "severely impaired," that she had the potential for physical violence, and that she lacked insight regarding her behavior or mental illness. He determined that Kristin was incapacitated and incompetent due to mental illness and that she required a guardian

---

10. Ark.Code Ann. § 28–65–205(b)(2) and (10).

11. Ark.Code Ann. § 28–65–203(e) (Supp. 2009).

12. Ark.Code Ann. § 28–65–205(b).

13. *Nat'l Enters. Inc. v. Lake Hamilton Resort, Inc.,* 355 Ark. 578, 142 S.W.3d 608 (2004) (abuse-of-discretion standard).

who was not a family member. He further stated that Kristin should be "admitted or committed to an inpatient psychiatric facility."

Dr. Deyoub testified to his findings at the August 28, 2008 hearing. Appellants moved to strike his testimony, claiming that it was "contaminated" by the materials that he received, allegedly in violation of the court's order. The judge refused to strike the doctor's testimony, recalling that she had approved his obtaining any collateral information that he wanted. Dr. Deyoub testified that the materials he received contributed to his understanding of the background of the case and helped form his diagnosis. However, he stated that Kristin's condition was "so flagrant that even without the documents, I still would have arrived at the diagnosis that I gave." Dr. Deyoub testified further that the family conflicts in this case did not sway him.

On appeal, appellants argue that the court should have stricken Dr. Deyoub's testimony because his consideration of outside materials violated a court order. They also contend that the court's acceptance of Dr. Deyoub's opinion was against the weight of the evidence. With regard to the court's refusal to strike Dr. Deyoub's testimony, we review that evidentiary ruling for an abuse of discretion.[14] Otherwise, we review the court's factual findings for clear error.[15] We also give due regard to the opportunity and superior position of the circuit judge to determine the credibility of the witnesses.[16]

Initially, we see no abuse of discretion in the court's decision not to strike Dr. Dey-oub's testimony. The transcript of the July 2008 hearing does not reflect any agreement that the doctor would conduct the evaluation without viewing outside sources. In fact, it reflects the court's realization that the doctor might require information about Kristin's prior treatment and, if so, he could ask for such information. Further, the court's order scheduling the evaluation did not restrict Dr. Deyoub's consideration of outside information. It also does not appear that appellants can show prejudice from Dr. Deyoub's receipt of extraneous materials. The doctor stated unequivocally that Kristin's condition was so flagrant that he would have given her the same diagnosis even if he had not received the documents.[17]

We also decline to hold that the circuit court clearly erred in adopting Dr. Deyoub's opinion that Kristin was incompetent or in finding that Kristin required a guardian. The court heard Dr. Deyoub's unequivocal testimony that Kristin was incapacitated, mentally ill, and should have a guardian of her person and her estate. To the extent that there were conflicts in the evidence regarding Kristin's need for a guardian, the court exercised its prerogative as fact-finder to resolve those conflicts.[18] Appellants also contend that Dr. Deyoub's one-and-a half-hour evaluation of Kristin should not have been accorded greater weight than the three-month evaluation performed in Wisconsin, which resulted in Kristin's being released from confinement. However, the weight to be

---

14. *Ark. Okla. Gas Corp. v. Boggs*, 86 Ark.App. 66, 159 S.W.3d 808 (2004).

15. *Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000).

16. *Id.*

17. *Schmidt v. Stearman*, 98 Ark.App. 167, 253 S.W.3d 35 (2007) (holding that we will not reverse an evidentiary ruling absent a showing of prejudice).

18. *Firstbank of Ark. v. Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993).

accorded expert testimony is the province of the fact-finder.[19] At any rate, we cannot say that the court clearly erred in relying on Dr. |₁₂Deyoub's recommendations, which had been developed just a few days earlier, rather than on findings developed in Wisconsin a year-and-a-half earlier.

Appellants maintain further that the circuit court should have given full faith and credit to the Wisconsin order that released Kristin from the mental-health facility there. Even if the Wisconsin order can be interpreted as an endorsement of Kristin's competence, the circuit court in this case was required to order a professional evaluation before conducting the guardianship hearing.[20] Appellants also make several references under this point to a court order appointing Kimberly as Kristin's guardian. That appointment had not occurred when the order appealed from in this case was filed. As a result, the record contains no order appointing Kimberly as guardian nor any notice of appeal from such an order. The matter is therefore not before us at this time.[21]

## VI. *Appointment of bank as guardian of estate*

 During the August 28, 2008 guardianship hearing, Sue Harness, the branch manager of First National Bank, testified that she knew Kristin to be capable of handling her own banking needs and that she had never seen Donald exercise any influence over Kristin's finances. Harness also stated that she would be willing to act as a limited guardian over Kristin's finances. At the conclusion of the hearing, the court appointed the trust department of First National Bank as the guardian of Kristin's estate and directed Harness to assist in|₁₃coordinating those services with Kristin. Appellants now argue that 1) the Bank had no standing to be appointed as a guardian because it was not a party to the case; 2) the court held no evidentiary hearing regarding Kristin's estate; and 3) the court had no jurisdiction over that portion of Kristin's estate that involved a trust.

A bank with trust powers may be appointed guardian of the estate of an incapacitated person.[22] We know of no requirement, and appellants do not cite one, that a bank must appear as a party to a guardianship proceeding before being named as guardian of the estate. We therefore find no error in the court's appointment of the bank.

As for appellants' argument that the court held no hearing on the matter of Kristin's finances, the record does not show that appellants asked for a hearing specifically related to Kristin's finances, nor do appellants sufficiently explain the type of hearing to which they believe themselves entitled. Regardless, the court heard testimony from Dr. Deyoub that Kristin was incompetent to handle her finances, and the court appointed a guardian of her estate accordingly. The court therefore complied with the guardianship statutes, and we see no basis for error.

 Finally, appellants indicate that part of Kristin's estate contains a trust, and they assert that a probate court has no jurisdiction over the trust. Appellants are likely referring to outdated case law, which held that trusts were chancery mat-

19. See *Ford Motor Co. v. Massey*, 313 Ark. 345, 855 S.W.2d 897 (1993).

20. Ark.Code Ann. § 28–65–212(a)(1) (Repl. 2004).

21. *In re Guardianship of Vesa*, 319 Ark. 574, 892 S.W.2d 491 (1995).

22. Ark.Code Ann. § 28–65–203(d)(2) (Supp. 2009).

ters rather than probate matters.[23] However, since the 2001 passage of amendment 80 to the Arkansas Constitution, the circuit court has had jurisdiction over all matters previously cognizable in circuit, chancery, probate, and juvenile courts.[24] Thus, there exists no jurisdictional barrier to the court's appointment of a guardian over Kristin's estate.

### VII. *Recusal*

On this point, appellants argue that the circuit judge exhibited bias by failing to enforce a stipulation regarding Dr. Deyoub's evaluation of Kristin and by signing orders that did not reflect the stipulation. Appellants are presumably referring to the alleged agreement, discussed earlier in this opinion, that the doctor would not rely on outside materials in his evaluation. We have already determined that the record does not reflect such an agreement. Appellants also contend that the judge exhibited bias by 1) appointing an attorney ad litem (which we have already ruled was proper); 2) naming Kimberly as Kristin's guardian (which had not occurred at the time this appeal was taken); 3) failing to require an evidentiary hearing before allowing Kristin to be moved to Minnesota (which also had not occurred at the time this appeal was taken); and 4) "contorting her face" when asking if appellants would appeal her decisions.

There is a presumption of impartiality on the part of judges, and a judge's decision whether to recuse is within her discretion and will not be reversed

absent abuse of that discretion.[25] The party seeking recusal must demonstrate bias and, unless there is an objective showing of bias, there must be a communication of bias in order to require recusal for implied bias.[26] The fact that a judge has ruled against a party is not sufficient to demonstrate bias.[27]

The record does not reflect that, at any time before entry of the order appealed from, appellants asked the circuit judge to recuse. Regardless, our review of the record reveals no exhibition of bias. The judge's interaction with the parties was thoughtful and respectful throughout the proceedings, and the judge was particularly mindful of protecting Kristin's rights and imposing as few restrictions on her as possible. The judge's compassion toward Kristin is particularly evident at the close of the August 28, 2008 hearing, where Kristin began to speak, unprompted, about preferring to be shot in the head rather than going to another facility; claiming that "Reagan and Bush" closed down such institutions; denying she was bipolar; claiming to be a victim of mail fraud and theft; and having difficulties in visiting her children. The judge patiently addressed Kristin's concerns. Though the court did enter rulings that were contrary to Donald's and Kristin's positions, adverse rulings do not constitute a ground for recusal.[28]

### VIII. *Attorney-fee award*

Donald appeals from a January 5, 2009 order directing him to pay Kristin's attorney ad litem $625 in attorney fees. How-

23. *E.g., Balletti v. Muldoon,* 67 Ark.App. 25, 991 S.W.2d 633 (1999).

24. *Ellis v. Reynolds,* 368 Ark. 572, 247 S.W.3d 845 (2007).

25. *Turner v. Nw. Ark. Neurosurgery Clinic,* 91 Ark.App. 290, 210 S.W.3d 126 (2005).

26. *Id.*

27. *Id.*

28. *Id.*

ever, Donald's amended notice of appeal, which included the fee order, was filed on February 20, 2009. Kimberly contends that Donald's appeal from the fee order was untimely and should be dismissed. We agree.

Rule 4(a) of the Arkansas Rules of Appellate Procedure—Civil provides that, with certain exceptions not applicable here, a notice of appeal "shall be filed within thirty (30) days from the entry of the judgment, decree or order appealed from." The failure to file a timely notice of appeal from a fee order deprives the appellate court of jurisdiction to consider the order.[29] Donald's notice of appeal from the fee order in this case was filed forty-six days after entry of the order. As a result, it was untimely. We therefore lack jurisdiction to address his appeal from that order, and the appeal from that order is hereby dismissed.

### IX. *Remainder of Kimberly's motion to dismiss appeal*

Kimberly also asserts that Kristin's and Donald's appeals should be dismissed in their entirety because Donald was not authorized to act as Kristin's attorney in filing her appeal and Donald did not formally intervene in the proceedings below and thus lacks standing to appeal. In the interest of clarifying the facts, we note that Donald entered an appearance as Kristin's counsel before filing a notice of appeal on her behalf; that neither Kristin nor her attorney ad litem objected to the appeal going forward; and that Donald participated in the proceedings below by filing pleadings and attending hearings virtually from the onset of the case. In any event, we do not view Kimberly's motion to dismiss on these grounds as a challenge

to our jurisdiction to hear the appeal. We therefore conclude that it is unnecessary to address the remainder of her motion, and we hold that it is moot by virtue of our affirmance of the case.

Affirmed; motion to dismiss granted in part.

GLADWIN and HENRY, JJ., agree.

---

29. *Craig v. Carrigo*, 353 Ark. 761, 121 S.W.3d 154 (2003); *Harold Ives Trucking Co. v. Pro Transp.*, 341 Ark. 735, 19 S.W.3d 600 (2000).