# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3597

_____

Kenneth Stewart, Jr.

*Plaintiff - Appellant*

v.

Nucor Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: April 12, 2016
Filed: July 15, 2016

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

Kenneth Stewart, Jr. appeals the district court's[1] adverse grant of summary judgment in his negligence suit against Nucor Corporation for injuries sustained while working at Nucor's steel mill. We affirm.

_____

[1] The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

## I.    BACKGROUND

Vesuvius USA contracted with Nucor to provide it with personnel to work at Nucor's Blytheville, Arkansas, steel mill, and it hired Stewart, a welder, for this purpose.  During training, Stewart signed a waiver of claims for injuries covered by workers' compensation against Vesuvius's contractees (the "Third-Party Waiver" or TPW).  The TPW read:

### WAIVER OF CLAIMS AND SUITS AGAINST THIRD-PARTIES RELATING TO INJURIES COVERED BY WORKERS' COMPENSATION

As a condition of my {employment} {continued employment} with <u>Vesuvius</u> and in recognition of the fact that any work-related injuries that might be sustained by me or covered by state Workers' Compensation laws, I hereby waive, to the extent permitted by law, any right I might have to make claims or bring suits against the following classes or categories of persons or entities arising out of or as a result of injuries sustained by me, which are covered under workers' compensation laws:

(a)    Any persons or entities having ownership, possession, or control of or over the premises or work sites at which my work will be performed;

(b)    Any persons or entities acting as architects, engineers, or construction managers with respect to work being performed or to be performed at the premises or work sites at which my work will be performed;

(c)    Any persons or entities performing work at, on, or about the premises or work sites at which my work will be performed;

(d)    Any contractors or subcontractors performing any portion of the work at or about the premises or work sites at which my work will be performed;

(e)    Any persons or entities that <u>Ken Stewart</u> may have contractual or implied obligations to indemnify arising out of any such injuries; and

(f)    Any agents, servants, or employees of any of the persons or entities in the classes or categories set out in (a) through (e), above.

The underlined portions above were filled in by hand by Stewart.

On the day of training, Stewart first spent ten to twelve hours watching training videos at two different locations. He was then taken to Nucor, given a stack of paperwork that included the TPW, and sent into a room with a video player. The trainer instructed Stewart to play some videos and answer questions about them. (The paperwork included quizzes pertaining to the videos.) Stewart was under the impression that he had to pass the quizzes in order to be hired. While watching the videos, Stewart also completed the other paperwork, including the TPW. Stewart testified that the trainer was preparing to leave for the day and apparently wanted to complete the training quickly, and as a result Stewart felt rushed to complete the paperwork.

Later, while working at Nucor's steel mill, Stewart was injured, for which he received workers' compensation benefits. He sued Nucor for negligence, and Nucor moved for summary judgment on the basis of the TPW. The district court granted the motion, finding that the TPW's language and the circumstances of its execution met the standard for enforcement of exculpatory contracts under Arkansas law and that the agreement was not unconscionable. Stewart appeals.

## II.    DISCUSSION

This is a diversity action occurring in Arkansas, and so we apply Arkansas law. "We review *de novo* the district court's grant of summary judgment, viewing the

evidence in the light most favorable to the nonmoving party," Robinson v. Terex Corp., 439 F.3d 465, 467 (8th Cir. 2006), as well as its interpretation of Arkansas law. Id. "Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." Id. The district court considered two issues in granting Nucor's motion: whether the TPW was enforceable and whether it was unconscionable.

## A.    Enforceability

"An exculpatory contract is one in which a party seeks to absolve himself in advance for the consequences of his own negligence." Finagin v. Ark. Dev. Fin. Auth., 139 S.W.3d 797, 806 (Ark. 2003). Exculpatory contracts are disfavored by the Arkansas Supreme Court, Plant v. Wilbur, 47 S.W.3d 889, 893 (Ark. 2001), and as such must clearly set out the liability to be avoided and are to be strictly construed against the drafter. Finagin, 139 S.W.3d at 806. They may be enforced "(1) when the party is knowledgeable of the potential liability that is released; (2) when the party is benefiting from the activity which may lead to the potential liability that is released; and (3) when the contract that contains the clause was fairly entered into." Id. at 808. The Arkansas Supreme Court has followed our circuit in adopting a "total transaction" approach to exculpatory contracts, ascertaining the intent of the parties according to both the language of the contract as well as the circumstances of its execution. Plant, 47 S.W.3d at 893 (citing Haines v. St. Charles Speedway, Inc., 874 F.2d 572, 575 (8th Cir. 1989)).

Stewart challenges elements (1) and (3), claiming that the circumstances surrounding his signing the TPW–being given the TPW at the end of a long day of training, feeling compelled to pay attention to videos he was being quizzed on, believing he needed to pass those quizzes to be hired, and feeling rushed by the trainer–create a genuine dispute of material fact as to whether he was knowledgeable of the potential liability he was waiving and whether he fairly entered into the

contract. Nucor points out that Stewart admitted in testimony that he was given an opportunity to review the contract. It is undisputed he has a high school diploma and the ability to read, and there is no evidence Stewart asked about the meaning of the TPW or the consequences of not signing it.

Stewart has not created a genuine issue of material fact as to the enforceability of the TPW. The parties stipulated that he had the opportunity to read the TPW, that he did not ask the trainer any questions concerning the meaning of the TPW, and that he had the ability to read and understand the contract. Stewart might have felt tired from the long day of training, distracted by the videos, and rushed by the trainer. But these facts alone do not amount to conditions sufficient to render the TPW unenforceable. This is so particularly because Stewart was indisputably afforded the opportunity, which he failed to avail himself of, to inquire about the meaning of the TPW. The language of the TPW is not so overly complex or riddled with legal jargon as to call into question Stewart's ability to understand it. "Ultimately, [Stewart] is bound to know the contents of the contract that he signed." Jordan v. Diamond Equip. & Supply Co., 207 S.W.3d 525, 532 (Ark. 2005). We affirm the district court as to enforceability of the TPW.

## B. Unconscionability

In assessing whether a contract provision is unconscionable, Arkansas courts again look to the totality of the circumstances, considering "whether there is a gross inequality of bargaining power between the parties and whether the aggrieved party was made aware of and comprehended the provision in question." Jordan, 207 S.W.3d at 535. Applying Arkansas law, we have also considered "whether the provision is commercially reasonable 'according to the mores and business practices of the time and place.'" Geldermann & Co., Inc. v. Land Processing, Inc., 527 F.2d 571, 576 (8th Cir. 1975) (quoting 1 Arthur L. Corbin, Contracts § 128, at 551 (1963)).

Stewart presents the same arguments here that he does for the enforceability issue. Nucor points to an affidavit it submitted from the CEO of an industrial construction and maintenance contractor that has an office in Blytheville, stating the company hired six welders during the relevant time period. Nucor argues this shows the availability of other work Stewart could have sought and thus that there was not a gross inequality in bargaining power. The district court noted that neither party presented record evidence of relevant industry practices but that Nucor cited to cases recognizing the validity of such agreements under comparable circumstances. See, e.g., Edgin v. Entergy Operations, Inc., 961 S.W.2d 724 (Ark. 1998).

Stewart has not created a genuine issue of material fact as to the unconscionability of the TPW. He does not present any evidence rebutting Nucor's affidavit showing the availability of other work in the region at that time. It is undisputed he had the opportunity to read and understand the TPW. Reviewing the language, it is not especially complicated or difficult to understand. Although there is no record evidence of industry practice, Edgin addressed precisely the same sort of contract at issue here–waiver of claims by an employee against the employer's clients for injuries that can be claimed under workers' compensation–and upheld the application of the agreement to foreclose the plaintiff-employee's negligence action. Additionally, there is no evidence presented by Stewart of fraud, duress, misrepresentation, or any other inequitable conduct on the part of Vesuvius or Nucor. We also affirm the district court on the unconscionability issue.

## III. CONCLUSION

For the foregoing reasons we affirm.

_____